52 So.2d 432 (1951)
HAGERTY et al.
v.
HAGERTY et al.
Supreme Court of Florida, Division A.
March 13, 1951.
As Amended on Denial of Rehearing May 29, 1951.
*433 Felix, Taylor & Kniskern and C.B. Kniskern, Jr., all of Miami, Irving Cypen, Miami Beach, and Alexander T. Hussey, New York City, for appellants.
Mitchell D. Price, Zaring & Florence, Miami, for appellee.
THOMAS, Justice.
This is a contest between three sons of the testator and the administrator of the estate of a fourth son, on the one part, and the widow and stepmother, on the other part, to determine the ownership of two bank accounts and the responsibility for estate and gift taxes.
The testator deposited money in a Miami bank and he and his wife signed a signature card authorizing the bank to recognize the signature of either on checks for withdrawals and providing further: "Either one or both or the survivor of either are authorized to sign checks. Signature of either one or the survivor to be sufficient for withdrawals of all or any part of the funds standing to the credit of the account." Additional deposits were made and checks drawn on this account both by the testator and his wife.
Later the testate opened an account with a Coral Gables bank in the name of himself and his wife. Here the signature card bore the provision: "If the account is joint the depositors agree with each other and with the said bank that all sums * * * shall be owned by the depositors jointly, with the right of survivorship, and shall be subject to payment upon the check of either * * * or the survivor * * *." Additional deposits were placed in this account by testate alone, but no checks were drawn against it either by him or his wife.
The chancellor held both to be the property of the widow on the theory that they constituted estates by the entireties.
Appellants contend that such ruling was erroneous because, no consideration having moved from the wife to the husband, an estate by the entireties could only have arisen by a gift inter vivos; that the essential elements of a gift of that kind were absent; that there was no unity of control; that there was no intent to create an estate by the entireties anyway. It is their thought that the money having been the husband's in the first instance, any title could have passed to the wife only by gift inter vivos in order to establish joint ownership with right of survivorship. On this premise is then based an attack on the gift because it did not have the characteristics of a gift inter vivos.
We see no occasion, however, to dwell on that essential ingredient of a gift inter vivos, the surrender of dominion by the donor. From the very nature of the deposits the husband did not vest in his wife full control of them. Such would have been utterly inconsistent with the unities of possession, *434 interest, and person peculiar to estates by the entireties. Andrews v. Andrews, 155 Fla. 654, 21 So.2d 205. We cannot follow the argument that there was no estate by the entireties created because there was no actual gift carrying with it a complete surrender by the donor.
We think the estate may be established by what was agreed upon when the deposits were made and that we should have no particular concern over the fact that all money was deposited by the husband. We find no difference in that respect between the circumstances of this case and a situation where a husband buys realty, paying for it with his own money, and has the title conveyed to himself and his wife. The transfer to her of the property interest is presumed to be a gift, but such gift is not to be measured by rules governing gifts inter vivos. The latter is an outright donation, while the former is the delivery without consideration of an interest in the whole of a joint estate, the entire interest to be received automatically by one spouse upon the death of the other. They are both gifts in the sense that no consideration passes from the donor to the donee, but just there the resemblance seems to end.
Next it is argued that no such arrangement should have been dignified as an estate by the entireties because there was no union of control inasmuch as checks could have been drawn by either husband or wife but need not have been drawn by them jointly. To support this position counsel has cited Marble v. Jackson, 245 Mass. 504, 139 N.E. 442, but we prefer the reasoning in Madden v. Gosztonyi Savings & Trust Co., 331 Pa. 476, 200 A. 624, 630, 117 A.L.R. 904, where this point was discussed and the court said that unity of control would not preclude one spouse from acting for the other. The court thought that when an account was payable on the order of the husband or his wife, there was "an immediate expression of authority, of agency [of either] to act for both." We think this is a sensible construction, particularly as applied to the language of the signature cards we have quoted.
It is our conclusion that both accounts were opened with the intention that each spouse, acting for himself or both, should have the use of all or any part of the balance at any time and that upon the death of either any remainder should immediately become the property of the survivor; also that the property interest passing to the wife under this arrangement is presumed to have been, and was, a gift.
We now deal with the responsibility for taxes of which, in this litigation, there are two aspects. The Federal Government in fixing taxes considered not only the property passing under the will, but also that which was not distributed under the will, that is, certain estates by the entireties and the proceeds of insurance policies. This tax, computed on all of the property, in and out of the will, was paid from the estate reaching the hands of the executor. In this suit the appellants sought a decree requiring the appellees to pay a fair share of these taxes so that all of them would not be borne by the property of the testamentary estate, while the property without the will would bear none.
The equity of this position is most appealing, but was rejected by the chancellor because he thought the testator had intended otherwise in his will.
The force of appellants' argument is well illustrated by giving in round numbers the value of the artificial and testamentary estates and the effect upon the latter of charging it with the whole tax. The widow got property valued at $342,000 in estates by the entireties, not now contested, and $8,000 in proceeds of life insurance policies. To the sum of these will now be added $106,000, the amount of the bank accounts involved in this litigation, a total of $456,000, from which no tax was deducted. The testamentary estate was worth $506,000, and against that was charged the tax on $962,000 amounting to $232,000. So the value of the testamentary estate was reduced to $274,000, while the rest of the artificial estate remained intact. The appellants insist that the taxes should be apportioned, to quote their brief, so that the widow "be required to share with the estate the burden of the entire taxes in the same proportion that the value of the property which she took to the exclusion of the estate bears to the value of the total tax estate."
*435 It seems to have been decided by the Supreme Court of the United States in Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106, that a state might by legislation place the final burden of a Federal tax levied on an artificial estate. As we understand it, the Federal Government is not concerned with distribution of the load so long as it receives the money. The principle of apportionment was recognized by us in Henderson v. Usher, 125 Fla. 709, 170 So. 846, and by the legislature later in Section 734.041, Florida Statutes, 1949, and F.S.A.
It strikes us that equity justifies if it does not require the adjustment appellants seek; so we now turn to the will to see if a reasonable construction of the appropriate section precludes such apportionment because the testator willed otherwise. There we find this provision: "I direct my executor * * * to pay * * * out of my residuary estate all estate, transfer and inheritance taxes." If we were to stop here and interpret this plain language, it would be obvious that such taxes were intended by the testator to come from the residuary estate and from no other source; but a condition or modification immediately follows in the sentence: "so that all payment to my distributees shall be net and free of any such tax."
Let us now judge the effect of the last clause on the first and of the whole sentence on the shares of the litigants as distinguished from the shares of the distributees. Certain personal property was devised to the appellee, widow, and a stated amount of cash to a granddaughter. Upon converting the estate, except certain stock in corporations in New York, into cash, which the executor was required to do, he was directed to give one part to the widow and two parts to the four children; also the stock in the New York corporation was eventually to be distributed likewise. The only mention of a residuary estate is a provision for payments from it of the taxes and the payment into it of the share of any child or descendant who should contest the will. So the question is immediately suggested: How could these taxes be paid without impairing the interests of the distributees, the children, as well as the widow? The two clauses neutralize each other, and the whole sentence is therefore no impediment to an equitable distribution of the tax burden.
The distributees fall into three categories, i.e., the granddaughter, the appellants, and the appellees. The interests of all these were to be protected by taking the taxes from the residuary. We do not understand that there is any attempt to burden with contribution the part of the granddaugher; so she may be eliminated from further discussion.
It seems to us that the levy of taxes on the artificial estate against the much smaller testamentary estate defeats the very purpose of the quoted clause, especially from appellants' standpoint, because their share under the will is apparently twice that of the appellee, widow. If she is to take, tax free, approximately one-half of all the property taxed, while the remainder is saddled with the whole tax, then the obvious result will be that the appellants, distributees, will pay greater proportionately, despite the declared purpose of the provision to protect distributees without differentiating among them.
In these circumstances we must conclude that apportionment would not be inconsistent with the testator's purpose, and that it should be decreed.
The final aspect of the tax burden involves gift taxes. The testator had made certain gifts to his wife on which he paid no taxes, but after his death the executor voluntarily discharged the obligation, and the appellants now claim that the donee should reimburse the estate for the amounts paid by the executor. Whether the donor is primarily and the donee secondarily liable for these taxes there is no need to discuss. We conclude on this point that, inasmuch as he died leaving the bill unpaid and his executor voluntarily paid it, there is no occasion for extracting the tax on the theory that she owed it too. She was discharged when the executor paid.
Affirmed in part; reversed in part.
SEBRING, C.J., and TERRELL and HOBSON, JJ., concur.