91 So.2d 649 (1956)
Ila WINTERS, Appellant,
v.
Lucille PARKS, as Executrix of the Estate of Walter Lee Winters, deceased, and Lucille Parks, Individually, and Cyrus J. Winters and Minnie L. Winters, his wife, Appellees.
Supreme Court of Florida. En Banc.
October 24, 1956.
Rehearing Denied December 14, 1956.
*650 Paul Game and Hardee & Hardee, Tampa, for appellant.
Hill, Hill & Dickenson and Robert Trask Mann, Tampa, for appellees.
THORNAL, Justice.
Appellant, Ila Winters, who was plaintiff below, seeks reversal of a decree of the Chancellor declaring that a certain bank account did not constitute an estate by the entirety.
The principal point for consideration is whether a bank account standing in the name of "Mr. or Mrs. W.L. Winters" followed by the typewritten statement "Joint Account with Right of Survivorship" constituted an estate by the entirety in the light of the facts revealed by the record.
Appellant, Ila Winters, married the deceased Walter Lee Winters on March 15, 1939. She was his second wife and there was a difference of 27 years between their ages. He died September 17, 1952, survived by the appellant as his widow and the appellees, Lucille Parks and Cyrus J. Winters, his children by his first marriage. At the time of his marriage to appellant, Mr. Winters was engaged in a small loan business in partnership with his son and daughter. He then maintained at least two bank accounts in the Exchange National Bank of Tampa. One account was in the name of the partnership "Winters & Winters". The other stood in the name of W.L. Winters individually. On February 21, 1940, Mr. Winters arranged for the signature card on his individual account to be changed so as to show the approved signatures to be "Mr. or Mrs. W.L. Winters." The card carried a typewritten provision which read, "Joint Account with Right of Survivorship." When W.L. Winters died, the balance in this "joint account" was a matter of a few hundred dollars. In this appeal there is no contest over the disbursement of this balance and we therefore do not pass upon that aspect of the matter.
His widow filed suit for an accounting against his estate and his son and daughter, contending that from the time of its inception, the "joint account" constituted an estate by the entirety and requested that there be an accounting by the estate for all properties, mortgages and other investments acquired by her deceased husband in his individual name with funds drawn out of the joint account from the time that it was established until the date of his death.
The record revealed that the widow contributed no funds of her own to the joint account. During the 12 years that it was in existence, she wrote only 5 or 6 checks against it. During a part of the time, the son, Cyrus J. Winters, was also permitted to draw checks against the account and he actually drew 2 or 3. It is perfectly clear that the deceased, W.L. Winters, treated the account as his own. He dealt with the funds, making investments and buying property as any individual would with his own money. His wife was thoroughly conversant with his methods of handling the money. Oftentimes she recorded deeds to property acquired in the name of her husband with funds drawn from the joint account. There is no evidence that she at any time laid claim to the account either as her own or as an estate by the entirety. She discussed her husband's will with him and was acquainted with a provision which read, "All cash in banks whether in my name or in joint name *651 with my wife is to be considered part of the estate * * * excepting a small savings account * * *" When the will was drawn, she offered no objection to this provision. The savings account is not here involved. The only time she mentioned acquiring property in joint name with her husband was when he bought their homeplace. She objected to his taking title in his own name testifying: "I just said that I thought it would be my home as well as his home. I didn't raise any fuss about it at all." She registered no objection whatever to this type of acquisition of title on the ground that it was acquired with jointly owned funds.
The Chancellor personally heard all the witnesses and had the direct and immediate opportunity to evaluate their credibility and the weight to be given to the evidence submitted. After hearing the testimony, the Chancellor concluded that there was not sufficient evidence to show that the deceased husband ever treated the fund as an estate by the entirety but that, to the contrary, he consistently dealt with the account in question as his own, and that his wife in substantial measure consistently recognized the account to be the individual account of her husband and that the privilege of signing checks was more one for convenience than it was to describe or define the nature of the estate.
Finding as he did, the Chancellor dismissed the complaint thereby denying appellant's claim for an accounting of the expenditures made by her husband out of the "joint account." Reversal of this decree is sought by this appeal.
Appellant contends that the language used on the signature cards indicated an intent to create an estate by the entirety and that the intent so suggested was not overcome by anything appearing in this record. On this premise she further contends that since the money in the account was stamped with the elements of an estate by the entirety, then when her husband withdrew funds from the deposit and acquired property in his own name, the nature of the estate impressed upon the money followed the funds into the property which was acquired with the money and that the property thereupon ipso facto became impressed with the same type of estate, her husband, according to her contention, being a constructive trustee for her in such property at the time of his death.
Appellees, of course, agree with the Chancellor and contend that the record sustains the conclusion that it was never intended that an estate by the entirety come into existence in the bank account in question.
The required elements of unity of possession, interest and control peculiar to an estate by the entirety are so well known that an extensive discussion would not be justified. The estate is one peculiar to the relationship of husband and wife and is not available to people in any other relationship. Aside from unity of control, possibly the most important incidents of a tenancy by the entirety are that the survivor of the marriage, whether husband or wife, is entitled to the whole estate and that any property so held is not subject to execution to satisfy the debts of either of the parties individually. The common law recognized estates of this character in personal property as well as in realty and this court has in this respect followed the common law.
In recent years we have been confronted with several problems involving alleged estates by the entirety in bank accounts. These cases customarily involve joint or alternative signatures of a husband and a wife accompanied by language similar to that in the instant case suggesting joint tenancy and right of survivorship. We have recognized the existence of estates by the entirety in bank accounts but we have consistently pointed out the difficulties attendant upon resolving problems relating to this particular type of property because of the relative ease with which *652 funds can be withdrawn from the account by either spouse resulting in constantly changing balances, as well as from the fact that ordinarily transfer of title to an estate by the entirety requires a joinder of both spouses.
Most often litigation arises after the death of one of the spouses and the courts are confronted with the problem of trying to determine whether the parties at the outset intended to create an estate of this nature. Depositors and banks alike could make a contribution toward eliminating many of these problems if at the outset when the account is established they would add language to the signature card stating clearly whether it is or is not intended to create an estate by the entirety.
In Bailey v. Smith, 89 Fla. 303, 103 So. 833, we recognized the proposition that an estate by the entirety can exist in a bank deposit. In Hagerty v. Hagerty, Fla. 1951, 52 So.2d 432, 433 we held that under the circumstances there indicated a bank account in the name of a husband and wife subject to being drawn upon by "`either * * * or both or the survivor of either * * *'" created an estate by the entirety. We emphasize that in the last cited case the court found that the factual situation surrounding the establishment of a bank account was sufficient to show that the parties then intended to create an estate by the entirety. In cases of this nature in the absence of language showing clearly the intent of the parties one way or the other it is always appropriate to investigate the facts and circumstances leading up to and surrounding the creation of the bank account in order to determine the intention of the original depositors.
In the case at bar the Chancellor had adequate evidence to justify his conclusion that when the individual account of the deceased husband was changed to a joint account, it was not intended by the parties to create an estate by the entirety. The salient facts have been summarized above and repetition is unnecessary. Although admittedly it is clear that the parties intended that the account should be a joint account and that any funds remaining be received by the survivor, such intention does not lead necessarily to the conclusion that an estate by the entirety was created. All of the surrounding facts and circumstances had to be considered and when this was done the Chancellor certainly found adequate support in this record for his conclusion that no estate by the entirety with all of its peculiar incidents was intended. See Section 659.29, Florida Statutes, F.S.A., with reference to joint bank accounts. Also see Section 689.15, Florida Statutes, F.S.A., with reference to joint tenancies and estates by the entirety.
The appellant having failed to make error appear, the decree of the Chancellor will have to be affirmed.
We have not overlooked the incidental contention that the original decree of April 5, 1955, did not tax the costs and on the basis of the motion subsequently filed, the Chancellor on May 3, 1955, assessed a part of the costs against the appellant. It is contended that he had no authority to do so, the time for the filing of the petition for rehearing having expired.
Although it might have been better procedure to have taxed the costs in the original decree, we can find no objection to the procedure actually followed in this instance, the appeal period not having expired and the Chancellor not having lost jurisdiction by the filing of notice of appeal. See Rule 1.38, 30 F.S.A. Florida Rules of Civil Procedure.
Finding no error the decree is 
Affirmed.
DREW, C.J., TERRELL, ROBERTS and O'CONNELL, JJ., and WARREN, Associate Justice, concur.