JOHNSON, Judge.
The issue which confronts us on this appeal is whether a checking account in the name of appellee and her deceased husband, H. B. Upton, was one constituting an estate by the entireties so that appellee was entitled as the survivor to the balance in the account upon the death of her husband. Our courts have been called upon periodically to step in and settle disputes as to the ownership of a bank account carried in multiple names. On one side the party whose name appeared along with the deceased on the bank account claims ownership whereas opposing such claim is the executor of the estate and various beneficiaries of the deceased.
Mr. Justice Thornal suggested a method to banking institutions and depositors in Winters v. Parks, 91 So.2d 649, 652 (Fla.1956) that would be most appropriate and helpful to the courts in determining the intent of the deceased as to ownership of an account. The suggestion being that:
“Depositors and banks alike could make a contribution toward eliminating many of these problems if at the outset when the account is established they would add language to the signature card stating clearly whether it is or is not intended to create an estate by the entirety.”
Unfortunately, this suggestion as to stating the intention of the parties on the signature card was not contained on the signature cards for the Upton account. In fact, the signature card makes no mention of what type of bank account was desired to be established. Such card merely shows that the authorized signatures for the account are those of “H. B. Upton” and “Mabel F. Upton.” Many of the cases in which ownership of a husband-wife account has been disputed involved a signature card which specifically stated that the account *354 was a joint account owned by the depositors jointly with right of survivorship. See Hagerty et al. v. Hagerty, et al., 52 So.2d 432 (Fla.1951); In Re Lyon’s Estate, 90 So.2d 39, 64 A.L.R.2d 1 (Fla.1956); Winters v. Parks, supra; and McGillen v. Gumpman, 171 So.2d 69 (Fla.App.3d, 1965).
The problem in the instant case is to examine the facts surrounding the creation of the bank account in an effort to determine whether there was a valid inter vivos gift by the deceased to his wife appel-lee in the proceeds of the bank account. Three basic elements for establishing a gift inter vivos are: “donative intent, delivery— not the money, in specie, in the joint fund, but a gift of an undivided interest in the funds, the surrender of an equal right to withdraw the funds, and acceptance by the donee.” Chase Federal Savings and Loan Association v. Sullivan, 127 So.2d 112 (Fla.1960).
Counsel for the parties stipulated that the case was to be tried based upon the issues made by the pleadings, an affidavit and depositions. The Chancellor considered this evidence and concluded that an estate by the entireties had been established and that the appellee was entitled to the entire proceeds of the account. This ruling comes to us with a presumption of correctness, although the presumption is not as strong as in cases where the Chancellor hears the testimony of witnesses. West Shore Restaurant Corp. v. Turk, 101 So.2d 123 (Fla.1958).
It is undisputed that the vice-president of Bay National Bank & Trust Company upon the request of Mr. Upton went to the hospital where Mr. Upton was a patient for the purpose of making a change in his bank account. The bank account was carried in the sole name of Mr. Upton. Mr. Upton informed the representative of the bank that he desired to have his account changed so that his wife could have access to and draw checks on the funds in the account in case anything happened to him. This account was the only checking account that Mr. Upton had and was used for both business and personal purposes. The evidence makes it perfectly clear that the bank official carefully explained to Mr. Upton that such an arrangement was not possible. He was told that an account could be established whereby either of the Uptons could presently draw on the account and in case of death the survivor would be entitled to the proceeds and could draw on the remaining funds. The banker was repeatedly questioned in his deposition on his explanation to Mr. Upton and the latter’s reaction and apparent understanding of the type of account that was being created. From this deposition it seems certain that Mr. Upton knew that when the account was changed that his wife thereby became entitled to withdraw money from the account at that time and also if she was the survivor would have sole claim to their joint account.
As further evidence of donative intent it was revealed that at the time the bank official was discussing the change in the account with Mr. Upton that Mr. Upton asked the banker to help Mrs. Upton with investing her money and business matters in case anything happened to him (Mr. Upton). This shows that the deceased intended and understood that his wife would have the proceeds in the account after his death. Further, there was some evidence that Mrs. Upton helped her husband in his business affairs and the money derived from the business venture was placed in this bank account.
Mr. Upton lived only a matter of weeks after changing his account. Neither of the Uptons had occasion to write a check on the account before his death. Two deposits were made to the account before his death but it was not known whether the deposits were made by Mrs. Upton or were mailed in directly by debtors.
Under the facts of this case we find that an estate by the entireties was created in the bank account and therefore, the *355 Chancellor was correct in ruling that appel-lee, as survivor, was entitled to the entire proceeds in the account.
Affirmed.
WIGGINTON, C. J., and SPEGTOR, J., concur.