254 So.2d 777 (1971)
FIRST NATIONAL BANK OF LEESBURG, Petitioner,
v.
HECTOR SUPPLY COMPANY, a Florida Corporation, et al., Respondents.
No. 39814.
Supreme Court of Florida.
October 27, 1971.
Rehearing Denied December 8, 1971.
John F. Cherry and Robert E. Austin, Jr., of Davis, McLin, Burnsed & Austin, Leesburg, for petitioner.
Herbert Stettin, of Feibelman, Friedman, Hyman & Britton, Miami, for respondents.
CARLTON, Justice:
The District Court of Appeal, Third District, has certified that its opinion in this cause, reported at 236 So.2d 240 (3rd D.C.A.Fla. 1970), passes upon this question of great public interest: Whether a joint checking account, maintained by a husband and wife, may be garnisheed for payment *778 of the husband's judgment debt? Certiorari was granted upon application of the petitioners. Article V, Section 4(2), Florida Constitution, F.S.A. Through our decision today, we quash the District Court's opinion holding that a joint account allowing for individual withdrawal may not be held as an estate by the entireties, and we remand this cause for further proceedings, so that the intent of the spouses may be established.
Prior to the dispute which resulted in this litigation, respondent, Hector Supply Company, was asked to sell materials on credit to Mr. E.P. Rohrer and Noah Peterson, doing business as Rohrer-Peterson, a partnership. In the course of determining the credit standing of the partners, Hector Supply was informed by petitioner, First National Bank of Leesburg, that Noah Peterson held a joint checking account with his wife, Mayre Lou Peterson, in petitioner's bank. Hector extended the requested credit, but in time the partnership foundered and Hector was forced to obtain a final money judgment against Rohrer and Peterson jointly and severally.
As judgment creditor, Hector Supply brought garnishment proceedings against the Bank, as garnishee, for collection against the account held by Peterson and his wife. The Bank responded with the assertion that the account was held jointly by the Petersons as a tenancy by the entireties; therefore, it was not subject to the individual debts of Noah Peterson. Affidavits were filed by the Petersons, stating that they intended that the account be held as entireties property. Nonetheless, the Civil Court of Record granted Hector Supply's Motion for Summary Final Judgment, stating only that the court was of the opinion, "[T]hat the bank account maintained by the defendant NOAH PETERSON at the FIRST NATIONAL BANK OF LEESBURG is not held by him as an estate by the entireties with his wife MAYRE LOU PETERSON * * *."
On appeal, the District Court affirmed, basing its decision upon the wording of the signature card forming the contract between the Petersons and the Bank. This card identified the Petersons as owning all funds in the account jointly, with a right of survivorship. The account was established in the name of "Noah or Mrs. Mayre Lou Peterson," and the funds were to be disbursed by checks drafted by either of them; additionally, according to the card, the Petersons exchanged mutual powers of attorney, recognizing in each the power to make deposits and drafts on behalf of both. The District Court held that the account was inconsistent with an estate by the entireties, saying:
"Since either of the joint depositors have the power to alienate the account by closing it out, and can achieve this alienation individually and without consent of the other, we cannot construe this particular type of personalty as an estate by the entireties." 236 So.2d at 205, 206.
In reaching its decision the District Court cited for precedential support the following footnote appearing in a relatively recent decision of this Court, Glasser v. Columbia Fed. Sav. & Loan Ass'n, 197 So.2d 6 (Fla. 1967), at page 7:
"7. It seems clear that the right of a spouse to make a transfer of funds from a checking account held as an estate by entirety upon one signature is based upon express delegation of such agency in the creation of the account. Hagerty v. Hagerty, Fla. 1951, 52 So.2d 432. This case in fact involved only survivorship and not alienability. Cf. Rader v. First Nat'l Bank in Palm Beach, Fla. 1949, 42 So.2d 1. Whether the existence of an individual power of alienation is inherently incompatible with this estate, which by definition is individually inalienable, is not treated at length in the opinions. The argument is quite strong for the conclusion that, at least as to property transferable by delivery of possession *779 alone, the estate cannot exist because of incompatibility with the entireties' doctrine. Holman v. Mays, 1936, 154 Or. 241, 59 P.2d 392, 395. Disposition of the point, however, is not essential in the case now presented."
We do not agree that the arrangement for individual withdrawal defeated the form of the Peterson's account as an estate by the entireties as a matter of law. Although this issue has been discussed in our previous cases of Hagerty v. Hagerty, 52 So.2d 432 (Fla. 1951); In re Lyons' Estate, 90 So.2d 39 (Fla. 1956), and Winters v. Parks, 91 So.2d 649 (Fla. 1956), we base our judgment today upon a reexamination of the doctrines supporting the tenancy by the entirety in bank accounts.
Our first observation is that a valid argument can be advanced for the proposition that the tenancy by the entirety in personalty was unknown to the common law. Neither Blackstone nor Kent, in their respective commentaries, suggest that personalty could be held by the entireties. Halsbury in 16 Laws of England 534 et seq. states that under the common law prior to an 1883 emancipation act, a gift or limitation of personalty to husband and wife vested the entire interest in the husband alone, in both law and equity. And we find this in Bishop, I Law of Married Women 140, § 211:
"If real estate is conveyed by a deed to a husband and his wife, this creates in them a peculiar kind of tenancy, known as a tenancy by the entirety * * *. Nothing of this sort is known in respect of personal property. Since the wife cannot own personal property in her possession in her own right, but whatever title she has in such property vests in the husband, if a chattel is given or sold to the husband and wife jointly the title passes wholly to him."
This Court recognized in Dollner v. Snow, 16 Fla. 86 (1877) that under the common law the husband became outright owner of his wife's personal property. And in a dissent in Sanderson v. Jones, 6 Fla. 430 (1855) at 476, 477, Mr. Justice Dupon recorded that a joint tenancy in personalty could not exist, "[F]or this very simple reason, based upon a canon of common law, that the husband jure moriti is entitled to all the personal estate of the wife * * *."
Nonetheless, it appears that a tenancy by the entirety in personalty was recognized prior to 1776 in certain cases involving mortgages [Coppin Case, 2 P.Wms. 496, 24 Eng. Reprint 832 (1728)], bequests [Atcheson v. Atcheson, 11 Beav. 485, 50 Eng. Reprint 905 ()], and money lent [Christ's Hospital v. Budgin, 2 Vern. 683 (1712)]. One could fairly say that the entireties theory was applied to personalty in instances where equity chose to support the wife lest she be unjustly deprived of her personal property, or in instances where profits and moneys derived from land held by the entireties was transformed into choses in action.
The issue of the doctrine's existence was directly presented to us in Bailey v. Smith, 89 Fla. 303, 103 So. 833 (1925). It was our judgment that those cases featuring the tenancy by the entirety in personalty sufficiently proved the existence of the doctrine so as to warrant inclusion of it in our jurisprudence. We adhere to this decision today.
Having recognized the doctrine as extant under the common law adopted by this State through Fla. Stat. § 2.01, F.S.A. and its predecessors, we now consider whether or not constitutional or statutory provisions have abated or altered the doctrine. The historic basis for the tenancy was the assumed incapacity of married women to hold property individually. In this century, as well as in the last, successive constitutional and statutory changes have ground this assumption to naught. Although in Fairchild v. Knight, 18 Fla. 770 (1882); English v. English, 66 Fla. 427, 63 So. 822 (1913), and Dodson v. National Title Ins. Co., 159 Fla. 371, 31 So.2d 402 (1947), we were prepared to say that the common law *780 had not been abrogated, because the assumed incapacity of married women continued to survive legislative assault, we could not reach this result today if incapacity remained as the foundation stone of the doctrine. The reason for this is that with the adoption of Article X, § 5, Florida Constitution of 1968, all distinctions between married men and women have been expressly abolished.
Because of the adoption of this Constitutional provision, we requested reargument of this cause so that attention could be directed specifically to this point. It is our opinion that this provision does not abolish the tenancy. Whether or not incapacity was the supporting theory behind the tenancy as of 1776, subsequent reconsideration of doctrine has led to development of the view that it ought to be based upon the intention of the parties, rather than upon any assumed incapacity of married women; and further, that concurrently, it ought to be based upon the simple fact that those who were married were to be considered as a unit with both taking per tout et non per my, and with neither taking as a separate individual. Thus, in English v. English, supra, at 66 Fla. 430, 431, 63 So. 823, we quoted with approval the following excerpt from 15 Amer. & Eng.Ency. of Law (2nd ed.) 847:
"Though the modern tendency is to regard the creation of an estate by the entireties as resting, not upon a rule of law arising from the supposed incapacity of husband and wife to hold in moities, but upon a rule of construction based on the presumption of intention, it may be laid down as a general proposition that, where land [and also personalty] is conveyed to both husband and wife, they become seized of the estate thus granted per tout et non per my, and not as joint tenants or tenants in common. The estate thus created is, however, essentially a joint tenancy, modified by the common-law doctrine that the husband and wife are one person."
Since the ancient doctrine of incapacity is no longer considered to be the foundation upon which the entireties doctrine rests, Article X, Section 5, of the Florida Constitution has no effect upon the tenancy. This is confirmed by the reference in Article X, Section 4(c) to married persons holding real property by the entireties. It is inconceivable that the Constitution would work to abolish the tenancy in one section, and to preserve it in another.
Let us now examine certain distinctions between realty and personalty in the application of the tenancy doctrine. In realty matters, where property is acquired specifically in the name of the husband and wife, we consider it to be a rule of construction that a tenancy by the entireties is created, although fraud may be proven. Losey v. Losey, 221 So.2d 417 (Fla. 1969); Ohio Butterine Co. v. Hargrave, 79 Fla. 458, 84 So. 376 (1920). But in personalty matters, a different standard obtains: not only must the form of the estate be consistent with entirety requirements, but the intention of the parties must be proven. The reason for this double standard is easily understood. Realty matters are matters of record which occur infrequently, and which generally involve formal transactions necessarily requiring consent of both spouses. Personalty, on the other hand, is generally not under mandate of record; it may easily be passed by either spouse without mutual consent or without knowledge of the other spouse; finally, it may change hands with great frequency, as in the case of the checking account. In re Lyons' Estate, supra, at 90 So.2d 42 (1956). Another reason for the distinction is that the application of entireties concepts to personalty becomes exceedingly complex as the nature of the personalty increases in sophistication, and the judicial mind seeks to require greater safeguards lest the tenancy be abused. Thus in our bank account cases, we have required the demonstration of intention. Hagerty v. Hagerty, In re Lyons' Estate, and Winters v. Parks, all supra. Intention, however, is not an issue *781 in this cause at present because the courts below ruled that the Peterson's account failed as a matter of law as to form.
A viable tenancy by the entirety, with regard to either realty or personalty, must possess always and at the same time the following characteristics of form: unity of possession (joint ownership and control); unity of interest (the interests must be the same); unity of title (the interests must originate in the same instrument); unity of time (the interests must commence simultaneously); and, the unity of marriage.
In reaching its decision that the Peterson's account was defective as to form, the District Court followed the suggestion in the Glasser case, supra, that the power to individually alienate the assets in a joint account held by married persons was inconsistent with the essential unity of possession, or control. We first examined the argument about individual alienability defeating the form of the estate in Hagerty v. Hagerty, supra. Our conclusion was that the unity of possession or control would not preclude one spouse from acting for the other because when an account was payable on the order of the husband or his wife, there was an immediate expression of authority of agency for either to act for both. In so deciding, we adopted the reasoning given in Madden v. Gosztonyi Sav. & Trust Co., 331 Pa. 476, 200 A. 624 (1938), and rejected the contrary reasoning espoused in Marble v. Jackson, 245 Mass. 504, 139 N.E. 442, a case closely akin to Holman v. Mays, 154 Or. 241, 59 P.2d 392 (1936), which was cited in Note 7 in the Glasser case, supra.
Today, we again state our preference for the holding given in Hagerty, supra. We move in this direction, and away from the suggestion in Glasser, supra, because of the existence of Fla. Stat. § 708.09, F.S.A. This statute allows for the passage of powers of attorney between spouses. If this is allowed by statute, then we perceive no reason why the statute cannot coalesce with the tenancy by the entirety so as to allow one spouse to draft checks in behalf of both. So long as a bank account contract or signature card is drafted in a manner consistent with the essential unities of the entireties estate, and so long as it contains a statement of permission for one spouse to act for the other, the requirements of form of the estate will have been met. However, since the form will be similar to that of a joint tenancy, and since the spouses may or may not intend that a tenancy by the entireties should result, the intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties.[1]
For the foregoing reasons, we find that the Peterson's signature card was compatible with the form required of an estate by the entirety in a bank account. The courts below erred in holding otherwise. However, since the signature card did not expressly identify the account as one held by the entireties, this case must be remanded for a determination of the intentions of the Petersons in regard to their account. If it is proven that they desired an estate by the entireties, then the account cannot be garnisheed on account of the individual debts of Noah Peterson.
The opinion of the District Court of Appeal is quashed, and this cause is remanded for further proceedings consistent with this opinion.
It is so ordered.
*782 ROBERTS, C.J., and ERVIN, ADKINS and McCAIN, JJ., concur.
DEKLE, J., concurs specially with opinion.
BOYD, J., concurs in part and dissents in part with Opinion.
DEKLE, Justice (concurring specially):
I concur with the well-written opinion of the majority except insofar as it understates the requirement for proof of the intention of the parties to create a tenancy by the entireties in a joint bank account.
In Doing v. Riley, 176 F.2d 449 (5th Cir.1949), it was held that the intent "ought to be made clearly to appear" and in Bailey v. Smith, 89 Fla. 303, 103 So. 833 (1925), this Court held that: "Whether such an estate exists as the result of the acquisition of property by and in the names of both husband and wife must be determined by a consideration of the nature and terms of the transaction as portraying the intent of the parties * * *." Likewise, in the case of In re Lyons' Estate, 90 So.2d 39 (Fla. 1956), this Court held that: "The intent may be implied from a deed to husband and wife but such implication may not, for obvious reasons, be indulged where a bank account or bonds simply payable to a man or his wife, are concerned." [Emphasis by the Court.]
This well established rule should not be deemphasized or understated. We are dealing with a type of transaction which is easily abused; in order to prevent an abuse of the entireties doctrine, it should be shown by clear and convincing proof that the parties' intention to create a tenancy by the entireties existed at the time of the acquisition of the assets in question, and that the tenancy by the entireties was not a hurried, after-the-fact creation used for the purpose of insulating funds from the legitimate claims of creditors of one of the spouses.
The statement by the majority, "* * * since the spouses may or may not intend that a tenancy by the entireties should result, the intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties," in my opinion contains the requirement for proof of intention, as discussed above. Therefore, with these additional comments clarifying the point, I concur in the opinion of the majority.
BOYD, Justice (concurring in part, dissenting in part).
I would concur with the majority in quashing the decision of the District Court but dissent from the remand requiring proof of intent to create a tenancy by the entireties. The rule announced by the majority creates, in effect, a presumption against the creation of estates by the entireties in personalty. This is contrary to the common experience of men as we know it and will require litigation in almost every instance, where, as is often true, the parties have not expressly provided in writing for a tenancy by the entireties.
The cases, statutes and provisions of the Florida Constitution of 1968 cited in the majority opinion clearly demonstrate that technical differences between real and personal property held by the entireties no longer exist. Men and women now stand practically as equals before the law in control and ownership of both real and personal property. Judicial recognition of this fact is in order.
It has long been recognized in this State that when a husband and wife acquire real property by deed there is a strong presumption that they are taking the property by the entireties absent a clear showing to *783 the contrary on the face of the instrument, such as a statement that the parties are taking it as tenants in common. The same presumption should be accorded to the ownership of personal property by husband and wife as has been recognized in the case of real property.
The benefit to the public, the bench and the bar of a uniform rule governing the creation of tenancy by the entireties in both real and personal property is obvious. In addition, the presumption favoring creation of tenancies by the entireties in personal property, operating as it does with real property, will generally eliminate the necessity for litigation concerning the intent of the parties. Proof of intent in transactions involving husband and wife is frequently difficult. Evidentiary rules such as the dead man's act increase the difficulty where one spouse has died.
In the case before us the signature card identified the bank account as a joint account held by husband and wife with right of survivorship. This created a presumption that the parties intended that the account be by the entireties. The fact that each spouse authorized the other by power of attorney to withdraw any or all of the funds from the account should not alter the status of the account as an estate by the entireties. The record further shows that the parties signed affidavits stating that their intent was to create a tenancy by the entireties in the account. There was no evidence to the contrary. Confronted with the above facts the trial court should not have entered a summary judgment against the husband and wife but should have ruled to the contrary holding that the bank account was by the entireties and not subject to execution for the debts of either husband or wife standing alone.
Accordingly, I would quash the opinion of the District Court of Appeal and remand the cause for further appropriate orders in keeping with this opinion.
NOTES
[1] We are mindful of the recent passage of Ch. 71-205, Laws of Florida, 1971, to be known as Fla. Stat. § 659.291, F.S.A., and which provides for a presumption of vesting upon the death of a joint account depositor. Passage of this act does not affect the tenancy by the entirety since it is a distinct form of property ownership independent of, although in certain respects similar to, a joint account.