# Supreme Court of Florida

_____

No. SC2024-1256
_____

**LINDA LOUMPOS,**
Petitioner,

vs.

**BANK ONE, et al.,**
Respondents.

December 11, 2025

CANADY, J.

In this case we consider whether a bank account opened by one spouse and later changed to a joint spousal account, with a new signature card designating that the joint account is owned as a tenancy by the entireties, can indeed be owned as a tenancy by the entireties and thus not be subject to garnishment by a creditor of only one spouse. Under the common law, ownership of property as a tenancy by the entireties generally required six unities, including time and title—i.e., that the spouses' interests originated at the same time and in the same instrument. The certified conflict

centers around whether, in the context of bank accounts jointly owned by spouses, the time and title requirements for a tenancy by the entireties were eliminated either by this Court's 2001 decision in *Beal Bank, SSB v. Almand & Associates*, 780 So. 2d 45 (Fla. 2001), or by a 2008 amendment to section 655.79(1), Florida Statutes. In brief, we conclude that *Beal Bank* does not speak to the narrow conflict issue presented here and thus did not purport to eliminate the time and title requirements for a tenancy by the entireties. *Beal Bank* instead addressed the issue of determining the intent of the owners to create a tenancy by the entireties. We further conclude that the 2008 amendment, however, specifically established a presumption in favor of a tenancy by the entireties that is not defeated by an absence of the unities of time and title.

In the decision on review, *Loumpos v. Bank One*, 392 So. 3d 841 (Fla. 2d DCA 2024), the Second District Court of Appeal held "that neither *Beal Bank* nor section 655.79(1) eliminated the common law requirement" for an entireties account. *Id.* at 848. The Second District thus rejected the debtor spouse's claim that the joint account, originally opened by only one spouse (not both), was

exempt. The Second District certified conflict[1] with *Versace v. Uruven, LLC*, 348 So. 3d 610 (Fla. 4th DCA 2022). There, the Fourth District Court of Appeal concluded that a similar account was an exempt "tenants by the entirety account." *Id.* at 611. *Versace* concluded that *Beal Bank* "control[led]," *id.*, and that *Beal Bank* "was reinforced by section 655.79(1)," *id.* at 614.

*Loumpos* correctly determined that *Beal Bank* is not controlling, but *Loumpos* failed to apply section 655.79(1), which we conclude is controlling. Because that statute, as *Versace* seemingly concluded, authorizes an entireties account even if the account was originally opened by only one spouse, we quash the Second District's decision in *Loumpos* and approve *Versace* to the extent it is consistent with this opinion.

We begin by reviewing *Beal Bank*. We then set forth the relevant text of section 655.79, as amended years after *Beal Bank*.[2] Next, we outline the facts before recounting the decision below and

1. We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

2. Section 655.79 has not been amended since 2008.

- 3 -

the decision in the certified conflict case. After summarizing the parties' arguments, we explain our holding.

**I.**

In *Beal Bank*, this Court was presented with certified questions from the Fifth District Court of Appeal. 780 So. 2d at 48 & n.1. After framing "the central issue" as "whether bank accounts titled in the name of both spouses were held as tenancies by the entireties and, therefore, not subject to execution by a creditor of only one of the spouses," this Court rephrased the certified questions "to more closely reflect [this Court's] analysis." *Id.* at 48. The rephrased questions, each of which expressly assumed that "the unities required to establish ownership as a tenancy by the entireties exist," were as follows:

> I. In an action by the creditor of one spouse seeking to garnish a joint bank account titled in the name of both spouses, *if the unities required to establish ownership as a tenancy by the entireties exist,* should a presumption arise that shifts the burden to the creditor to prove that the subject account was not held as a tenancy by the entireties?
> II. In an action by the creditor of one spouse seeking to garnish a bank account jointly titled in the name of both spouses, *if the unities required to establish ownership as a tenancy by the entireties exist,* but the signature card expressly states that the account is owned as a joint tenancy with right of survivorship, does that

- 4 -

statement alone constitute an express disclaimer that the account is not held as a tenancy by the entireties?

III. In an action by the creditor of one spouse seeking to garnish a bank account jointly titled in the name of both spouses, *if the unities required to establish ownership as a tenancy by the entireties exist,* but the signature card expressly disclaims the tenancy by the entireties form of ownership, may the debtor resort to extrinsic evidence to prove that a tenancy by the entireties was intended if the debtor establishes that the financial institution did not offer a tenancy by the entireties form of account ownership?

*Id.* at 48-49 (emphasis added). *Beal Bank* ultimately "answer[ed] questions one and three in the affirmative and question two in the negative." *Id.* at 49.

*Beal Bank*'s framing of the questions was not surprising, given that the accounts were all opened by both spouses. *See id.* at 49-51.[3] *Beal Bank* also noted that it was "not discuss[ing]" the unraised issue of whether "unity of time should be omitted from the list of tenancy by the entireties requirements." *Id.* at 52 n.6.

*Beal Bank* began its analysis by setting forth certain principles, including the different forms of joint ownership. This

---

3. *Beal Bank* chose to "not address" a certain account that was established by one spouse and "later amended to include the name of [the other spouse]." 780 So. 2d at 49 n.2.

Court explained that "a tenancy by the entireties possesses six characteristics," namely:

> (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).

*Id.* at 52 (footnote omitted) (citing cases). This Court also explained that tenancies by the entireties and joint tenancies with right of survivorship share *all* unities *except* the unity of marriage, and that "only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property." *Id.* at 53.

*Beal Bank* next noted this Court's adoption in 1925 of "the common law rule that a tenancy by the entireties may exist in both real property and personal property," *id.* (citing *Bailey v. Smith*, 103 So. 833, 834 (Fla. 1925)), as well as this Court's subsequent adherence to that rule, *id.* at 53-54 (citing *First Nat'l Bank v. Hector Supply Co.*, 254 So. 2d 777, 779-80 (Fla. 1971); *Winters v. Parks*, 91 So. 2d 649, 651 (Fla. 1956); *In re Estate of Lyons*, 90 So. 2d 39, 41-42 (Fla. 1955); *Hagerty v. Hagerty*, 52 So. 2d 432, 434 (Fla. 1951)).

But *Beal Bank* recognized as problematic that the standards of proof were different for tenancies by the entireties in real property versus in personal property. *Id.* at 54. *Beal Bank* explained:

> Unlike real property titled in the name of both spouses that is presumptively considered to be a tenancy by the entireties as long as the other unities are established, our jurisprudence has treated bank accounts and other personal property differently. In determining whether personal property is held as a tenancy by the entireties, we have applied "a different standard" by requiring that "not only must the form of the estate be consistent with entirety requirements, but the intention of the parties must be proven." *Hector Supply Co.*, 254 So. 2d at 780; *see also Winters*, 91 So. 2d at 652; *In re Estate of Lyons*, 90 So. 2d at 42; *Hagerty*, 52 So. 2d at 434; *Bailey*, 103 So. at 835.

*Id.*

After highlighting the problems that arose from those different standards of proof, *see id.* at 55-56, *Beal Bank* looked to "policy considerations," *id.* at 57, in concluding it was "time" "to recognize a presumption in favor of a tenancy by the entireties arising from joint ownership of bank accounts by husband and wife," *id.* at 58. This Court then stated its first holding:

> [I]f the signature card of the account does not expressly disclaim the tenancy by the entireties form of ownership, a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties as long as the account is established by

- 7 -

husband and wife in accordance with the unities of possession, interest, title, and time and with right of survivorship.

*Id.* at 58.  And *Beal Bank* "recede[d] from *Hector Supply Co.*, *Winters*, *Bailey*, and *In re Estate of Lyons*, to the extent [they] are inconsistent with" that holding.  *Id.* at 59.

*Beal Bank* then "address[ed] *the effect on the presumption* of language on the signature card."  *Id.* at 60 (emphasis added).  Of relevance, despite receding from *Hector Supply Co.*, this Court agreed with *Hector Supply Co.* "that an express designation on the signature card that the account is held as a tenancy by the entireties ends the inquiry as to the form of ownership."  *Id.* (citing *Hector Supply Co.*, 254 So. 2d at 781).[4]  The remainder of *Beal Bank*'s holdings and analysis of the accounts at issue, *see id.* at 60-61, have no relevance here.  But *Beal Bank* did refer to section 655.79 while "urg[ing] the legislature" to "mandate that financial institutions provide affirmative choices to select each form of

---

4.  None of the accounts in *Beal Bank* had a signature card expressly designating the account as held as a tenancy by the entireties.  *See* 780 So. 2d at 49-50.

ownership on the signature cards, with an explanation of each type of ownership." *See id.* at 62 & n.24.

**II.**

In 2008, seven years after *Beal Bank,* the legislature added one sentence to subsection (1) of section 655.79—titled "Deposits and accounts in two or more names; presumption as to vesting on death." *See* ch. 2008-75, § 8, Laws of Fla. In relevant part (with the language added by the 2008 amendment shown in bold italics), section 655.79 provides:

(1)   Unless otherwise expressly provided in a contract, agreement, or signature card executed in connection with the opening or maintenance of an account, including a certificate of deposit, a deposit account in the names of two or more persons shall be presumed to have been intended by such persons to provide that, upon the death of any one of them, all rights, title, interest, and claim in, to, and in respect of such deposit account, less all proper setoffs and charges in favor of the institution, vest in the surviving person or persons. ***Any deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing.***
(2)   The presumption created in this section may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent. In the absence of such proof, all rights, title, interest, and claims in, to, and in respect of such deposits and account and the additions thereto, and the obligation of the institution created thereby, less all proper setoffs and

charges in favor of the institution against any one or more of such persons, upon the death of any such person, vest in the surviving person or persons, notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person and notwithstanding that the provisions hereof may constitute or cause a vesting or disposition of property or rights or interests therein, testamentary in nature, which, except for the provisions of this section, would or might otherwise be void or voidable.

§ 655.79, Fla. Stat. (emphasis added).

## III.

Petitioner, Linda Maragoudakis (f/k/a Linda Loumpos), had a default judgment entered against her in 2003. She later married Peter Maragoudakis. In February 2017, Peter opened a bank account in his name only. A few months later, he and Petitioner "executed new signature cards that stated the account belonged to 'Peter Maragoudakis & Linda Maragoudakis, Ten by Enty.' They also checked the 'Joint Tenants by Entirety' box on the signature card." *Loumpos*, 392 So. 3d at 842-43. Peter's wages were the only monies deposited into the account.

Meanwhile, the judgment against Petitioner was eventually assigned to Dove Investment Corp. (Respondent), who sought to garnish the joint account. Petitioner claimed exemption on the

- 10 -

ground that the account "was an entireties account, and the debt belonged solely to [her]." *Id.* at 843. Respondent countered that, because Petitioner's name was not on the account originally, "the unities of time and title were not present" and that the account thus could not be an entireties account. *Id.*

> [Petitioner] did not dispute that the unities of time and title were not present. Instead, relying on *Beal Bank*, she argued that if a bank signature card expressly designates an account as an entireties account, that ends the inquiry as to the form of ownership of the account and the absence of one of the unities does not preclude the account from being an entireties account. She also relied on section 655.79(1), Florida Statutes (2017), arguing that it codified *Beal Bank* and extended its holding to all spousal accounts by providing that all spousal accounts shall be considered as tenancies by the entireties unless otherwise specified in writing, regardless of the presence or absence of the common law requirement of unities. The trial court rejected these arguments, found that the unities of time and title were still necessary to create an entireties account, and it rejected her claim of exemption.

*Id.*

On appeal, the Second District affirmed, holding that "neither *Beal Bank* nor section 655.79(1) eliminated the common law requirement" for "an entireties account," *id.* at 848, not even "if the account's signature card expressly designates the account as a tenancy by the entirety," *id.* at 842. Noting *Beal Bank*'s repeated

- 11 -

references to "the unities," the Second District rejected Petitioner's argument that *Beal Bank* "dispensed with the requirement that [the unities] be present." *Id.* at 845. The Second District then turned its attention to the Fourth District's decision in *Versace.*

*Versace* reached the opposite result where a debtor spouse was similarly added to the other spouse's account, and the new signature card "expressly stated that the account was held as tenants by the entireties." 348 So. 3d at 612. In holding that the account was *not* subject to garnishment for the individual debt of the debtor spouse, *Versace* concluded "that *Beal Bank* controls." *Id.* at 611. *Versace* pointed to what it viewed as *Beal Bank*'s unqualified "statement that an express designation of tenancy by the entireties [on the signature card] 'ends the inquiry.' " *Id.* at 613 (quoting *Beal Bank*, 780 So. 2d at 60). *Versace* also relied on the 2008 amendment to section 655.79(1). In *Versace*'s view, section 655.79(1) went beyond *Beal Bank* by providing that "all spousal bank accounts are considered as held by tenancies by the entireties unless otherwise specified in writing." *Id.* at 613-14.

Here, the Second District rejected *Versace*'s reading of *Beal Bank*, concluding that *Versace* "ignore[d] the context in which the

- 12 -

*Beal Bank* court made the ['ends the inquiry'] statement." *Loumpos*, 392 So. 3d at 846. According to the Second District, *Beal Bank* was "referring [to] the inquiry into the parties' intent as to the form of ownership of the account." *Id.* (citing *Beal Bank*, 780 So. 2d at 60-61). The Second District also took issue with *Versace*'s reading of section 655.79(1), opining that "*Versace*'s interpretation of the statute [was] not based on its text" and that the 2008 amendment "simply codified *Beal Bank*." *Id.* at 847. The Second District noted other instances in which "[t]he legislature . . . abrogate[d] common law unities." *Id.* Among other things, the Second District looked to the rest of section 655.79, which, according to the Second District, creates a "presumption in favor of the creation of a joint account with the right of survivorship" and then "explains how that presumption can be rebutted." *Id.* at 848. The Second District seemingly concluded that the statute's treatment of joint tenancies was sufficiently clear to abrogate the common law, but that the statute's treatment of tenancies by the entireties was not. *Id.* In the end, the Second District certified conflict with *Versace*. *Id.*

- 13 -

## IV.

The narrow issue we resolve is whether either *Beal Bank* or section 655.79(1) authorizes a joint spousal account to be owned as a tenancy by the entireties even if the account was originally established by one spouse. This issue presents a question of case-law interpretation and of statutory interpretation. Our review is thus de novo. *See Pedroza v. State*, 291 So. 3d 541, 545 (Fla. 2020) (case-law interpretation); *Ripple v. CBS Corp.*, 385 So. 3d 1021, 1027 (Fla. 2024) (statutory interpretation). We conclude that *Beal Bank* is inapplicable, but that section 655.79 does authorize a joint spousal account to be owned as a tenancy by the entireties even if the account was originally established by one spouse.

## A.

As should be apparent from our earlier review of *Beal Bank*, that decision does not answer the question presented here. *Beal Bank* went out of its way to limit its policy-based holdings to the facts presented there—joint accounts opened and maintained by both spouses. *Beal Bank*'s rephrased questions were all framed in the context of "if the unities . . . exist." *See* 780 So. 2d at 48-49. *Beal Bank* chose to "not address" an account initially opened by one

spouse.  *Id.* at 49 n.2.  And *Beal Bank* declined to "discuss" whether "unity of time should be omitted from the list of tenancy by the entireties requirements."  *Id.* at 52 n.6.

In short, nothing in *Beal Bank* supports *Versace*'s conclusion "that *Beal Bank* controls"—that is, that it contained a holding on the dispositive issue here.  *Versace,* 348 So. 3d at 611.  *Versace* misread the language in *Beal Bank* "that an express designation on the signature card that the account is held as a tenancy by the entireties ends the inquiry as to the form of ownership."  *Beal Bank,* 780 So. 2d at 60 (citing *Hector Supply Co.,* 254 So. 2d at 781).  That language was plainly penned in the same context as the rest of the opinion, which focused on determining the intent of the spouses. *Loumpos* correctly distinguished *Beal Bank.*

**B.**

Aside from the inapplicable *Beal Bank* decision, the parties' competing arguments focus on the 2008 amendment to section 655.79(1).  Petitioner asserts that the amendment "clearly and unequivocally removed" all common law unities for a tenancy by the entireties account, except the unity of marriage.  Respondent counters that the amendment essentially codified *Beal Bank* and

thus "did not alter the need to comply with the common law unities." Respondent's interpretation of the statute cannot be squared with the plain text of section 655.79(1), which establishes a presumption in favor of a tenancy by the entireties and, in doing so, looks beyond initial account creation.

## C.

As set forth earlier, the 2008 amendment to section 655.79(1) provides: "*Any deposit or account made in the name of two persons who are husband and wife* shall be considered a tenancy by the entirety unless otherwise specified in writing." § 655.79(1), Fla. Stat. (emphasis added). That text, and its disjunctive phrase "deposit or account made," unmistakably looks beyond account inception. That reading of the 2008 amendment, as explained below, is confirmed by the overall context of section 655.79. Presumably, that is how *Versace* read the statute, although neither *Loumpos* nor *Versace* undertook a full analysis of the statutory text.

In arriving at a different understanding of the statute, the Second District in *Loumpos* was guided by what we have described as "[a] basic rule of textual interpretation . . . that 'statutes will not be interpreted as changing the common law unless they effect the

- 16 -

change with clarity.' " *Peoples Gas Sys. v. Posen Constr., Inc.*, 322 So. 3d 604, 611 (Fla. 2021) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012)). The Second District viewed the "common-law principles" on this issue as "well-settled." *Loumpos*, 392 So. 3d at 847 (quoting *Dudley v. Harrison, McCready & Co.*, 173 So. 820, 823 (Fla. 1937)). And the Second District concluded that the 2008 amendment was not clear enough "to change the common law." *Id.* We disagree.

The presumption against change in the common law provides no "reason to reject a fair reading [of a statute] that changes the common law." Scalia & Garner, *supra,* at 318. We have recognized the "cardinal canon [of construction]" that we "presume that a legislature says in a statute what it means and means in a statute what it says there." *Page v. Deutsche Bank Tr. Co. Americas*, 308 So. 3d 953, 958 (Fla. 2020) (alteration in original) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). And just as courts "may not 'rewrite [a] statute or ignore the words chosen by the Legislature so as to expand its terms,' " *State v. Gabriel*, 314 So. 3d 1243, 1248 (Fla. 2021) (quoting *Knowles v. Beverly Enters.-Fla., Inc.*, 898 So. 2d 1, 7 (Fla. 2004)), so also courts should not ignore

words in a statute to impose a narrow construction of the statute. Instead, courts should strive to give a fair reading to the text. And courts should not manufacture ambiguity to defeat such a fair reading.

Here, Respondent's reading of the 2008 amendment—a reading presumably adopted by *Loumpos*—ignores relevant language. Respondent focuses solely on "[a]ny . . . account made." Citing dictionary definitions of the word "make," and noting the legislature's use of the past-tense "made," Respondent argues that "the presumption created by § 655.79(1) Fla. Stat., would only apply to an account brought into or caused to exist, by a married couple, which clearly means the point in time when the account was initially established." But Respondent wholly ignores "[a]ny deposit . . . made," language that clearly contemplates more than just initial account creation. That standing alone undermines Respondent's and *Loumpos*'s understanding of the statute.

Because the 2008 amendment looks to more than initial account creation, the more reasonable interpretation of "account made" similarly looks beyond just account opening. In other words, when an individual account is changed to a joint spousal account,

- 18 -

it can certainly be said that the "account" has been "made in the name of two persons who are husband and wife."

In short, viewed in isolation, the one-sentence addition to section 655.79(1) strongly supports the conclusion that an individual account converted to a joint spousal account can be held as a tenancy by the entireties. Of course, proper statutory interpretation requires viewing statutory provisions not in isolation but rather in "the full textual context of which they are a part." *Allstate Ins. Co. v. Revival Chiropractic, LLC*, 385 So. 3d 107, 113 (Fla. 2024). The Second District did consider context to the extent that it drew a contrast between subsection (1)'s second sentence and instances in which "[t]he legislature . . . abrogate[d] common law unities," *Loumpos*, 392 So. 3d at 847, including subsection (1)'s first sentence and its "treatment of the presumption in favor of the creation of a joint account with the right of survivorship," *id.* at 848. But section 655.79, in its full context, confirms our reading of the 2008 amendment.

As recognized by the Second District, the first sentence of section 655.79(1) creates a presumption in favor of a joint tenancy if there is "a deposit account in the names of two or more persons"

- 19 -

and if there is no express provision to the contrary "in a contract, agreement, or signature card executed *in connection with the opening or maintenance of an account.*" § 655.79(1), Fla. Stat. (emphasis added). This sentence itself—much like the second sentence added in 2008—contemplates more than just the initial "opening . . . of an account." Subsection (2) of the statute then provides that the presumption "may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent." § 655.79(2), Fla. Stat. Subsection (2), of course, says nothing about any unities.

Here, as an initial matter, the Second District seemingly concluded that subsection (1)'s first sentence and subsection (2), viewed together, render the unities of time and title irrelevant with respect to the presumption of a joint tenancy. *See Loumpos*, 392 So. 3d at 848. Other courts appear to share that view. *See Larkins v. Mendez*, 363 So. 3d 140, 143, 145 n.4 (Fla. 3d DCA 2023) (looking to section 655.79(1) and concluding that probate court should not have "appl[ied] a common law unities of title analysis" regarding an account to which the decedent added his son, with the two signing a new signature card and "checking the box marked

'multiple-party account with right of survivorship' "); *In re Est. of Herring*, 670 So. 2d 145, 148 (Fla. 1st DCA 1996) ("[S]ection 655.79(1) is free of any ambiguity in prescribing that a bank account . . . opened or maintained 'in the names of two or more persons shall be presumed to have been intended' [to be a joint tenancy], unless the document creating the account expressly provides otherwise."); *see also In re Benzaquen*, 555 B.R. 63, 67 (Bankr. S.D. Fla. 2016) (concluding "that the 2008 addition to Fla. Stat. § 655.79(1) . . . does not change the required six unities"; contrasting that statutory language with the "language that appears in the beginning of section 655.79(1)").

From there, however, the Second District concluded that the 2008 amendment was too different from the other "language in section 655.79(1)" to have "abolish[ed] the unities of time and title" with respect to tenancies by the entireties. *Loumpos*, 392 So. 3d at 848. That line of reasoning views tenancies by the entireties and joint tenancies as wholly distinct concepts, governed by distinct legal analyses, despite their appearance in the same subsection of the same statutory scheme. Such a reading erroneously interprets

- 21 -

the last sentence of section 655.79(1) in isolation from the statutory scheme at large.

Recall, a joint tenancy and a tenancy by the entireties share "identical" "characteristics and unities," except that a tenancy by the entireties also involves the unity of marriage. *Beal Bank*, 780 So. 2d at 56; *see Loumpos*, 392 So. 3d at 844 (acknowledging the same). Said differently, a tenancy by the entireties necessarily satisfies the definition of a joint tenancy. So, if the first sentence of section 655.79(1) renders irrelevant the unities of time and title with respect to joint tenancies, and if the only difference in form between a joint tenancy and a tenancy by the entireties is the unity of marriage, then it strains reason to conclude that the legislature's addition of the second sentence nevertheless requires an examination into the unities of time and title with respect to tenancies by the entireties. Even more so given that both sentences in section 655.79(1), although worded somewhat differently, plainly contemplate more than just account "opening."

So we reject the view of the statute advocated by Respondent and adopted by the Second District. A fair reading of the language added by the 2008 amendment understood in the full statutory

context precludes interpreting the phrase "account made in the name of two persons who are husband and wife" to mean "account *originally* made in the name of two persons who are husband and wife."

## V.

We hold that section 655.79, Florida Statutes, authorizes a joint spousal bank account to be held as a tenancy by the entireties even if the account was originally established by one spouse. We quash the decision of the Second District in *Loumpos* and approve the decision of the Fourth District in *Versace* to the extent it is consistent with this opinion.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

Second District - Case No. 2D2022-3908

(Pinellas County)

John D. Goldsmith of Trenam Law, Tampa, Florida,

for Petitioner

Hugh Shafritz and Aaron F. Miller of Shafritz and Associates, P.A., Delray Beach, Florida,

for Respondents