598 So.2d 225 (1992)
The TERRACE BANK OF FLORIDA, a Florida Banking Corporation, Appellant,
v.
Earnest A. BRADY, Jr., and Barnett Bank of the Suncoast, N.A., Appellees.
No. 91-01672.
District Court of Appeal of Florida, Second District.
May 8, 1992.
*226 Michael C. Addison and C. Cole Jeffries, Jr., Dykema Gossett, Tampa, for appellant.
Frederick J. Mills and Tracey K. Jaensch, Morrison, Morrison, Gregory & Mills, P.A., Tampa, for appellee Earnest A. Brady, Jr.
No appearance for appellee Barnett Bank of the Suncoast, N.A.
PARKER, Judge.
The Terrace Bank of Florida appeals a trial court's final order dissolving a writ of garnishment of Earnest A. Brady, Jr.'s accounts in the Barnett Bank of the Suncoast (Barnett) on the basis they were an estate by the entireties. We reverse.
In 1987 Earnest and Carolyn Brady opened a bank account at Barnett which was listed as a money market checking account. The account was titled in "Earnest A. Brady, Jr., D.M.D., or Carolyn W. Brady." The signature card, signed by both Dr. and Mrs. Brady, had a box checked "joint account with survivorship."
The depositor's agreement incorporated by reference on the signature card contained the rules and regulations of the bank and the terms of the contract between the bank and the Bradys. The language on the signature cards stated: "By signing this document, I (we) have opened the type of account designated below and have received a copy of that account's agreement and terms and agree to be bound by it." Paragraph 10 of the agreement stated that joint tenancy only is contemplated and specifically excluded tenants in common. Paragraph 12 stated that the Bank may apply funds from the customer's account toward the payment of debts of one of the joint tenants "whether the debt is several and the account is joint or whether the debt is joint and the account is several."
The initial deposit into this account came from two sources. One was a Barnett Bank commercial loan to Earnest A. Brady, Jr. and Carolyn W. Brady made on the same date the account was opened. Dr. Brady had transferred the other funds from his account with another bank. The Bradys executed a business purpose statement certifying "that the funds are to be used for business, commercial or agricultural purposes and not primarily for personal, family or household purposes."
Thereafter, money was drawn from and deposited into the account on a periodic basis, with the account being used for all of Dr. Brady's financial transactions until January 15, 1988. Thereafter, the Bradys established a second account with Barnett by the transfer of funds out of the first account. The second account was created as a money market investment account, while the first account, from which the funds were transferred, continued as a money market checking account. Neither Dr. Brady nor Barnett signed any further documents in connection with either of those accounts. The two accounts remained *227 open and active until the time the writ of garnishment was served.[1]
Following the entry of a final judgment in 1991 in favor of Terrace Bank against Dr. Brady and other defendants, a writ of garnishment was issued and served upon Barnett as garnishee where the Bradys had the two accounts. Barnett responded to the interrogatories served with the writ by reporting that it held funds in the two accounts. The total of the two accounts exceeded $168,000. Following Barnett's response, Mrs. Brady wrote a letter to Barnett which stated that the accounts were owned as joint tenants with right of survivorship and that a writ of garnishment which referenced Earnest A. Brady, Jr. did not affect the two accounts. Dr. Brady thereafter filed an emergency motion to dissolve the writ of garnishment. Dr. Brady claimed that the two accounts were exempt from garnishment because they were held as an estate by the entireties.
No live testimony was offered at the final hearing, and counsel for the parties stipulated to the admission of the transcripts of depositions of relevant witnesses. The three Barnett witnesses established that Barnett did not offer or allow tenancy in common accounts or checking accounts by the entireties. All witnesses testified that there was no discussion concerning opening an account by the entireties when the Bradys opened these accounts. Nor was there any discussion or request to open an account as husband and wife such that the funds in the account would be protected from the creditors of one of the parties to the account. Dr. Brady testified that when he opened the accounts he did not know anything about an entireties account, and he was not looking for an account where the money would be exempt from his creditors.
The evidence offered by Dr. Brady in support of the claim that the accounts were held by the entireties was that the Bradys were husband and wife at the time the accounts were opened and that they continued to be married until the present time. Mrs. Brady testified that at the time the accounts were opened, she and Dr. Brady wanted to have a joint account. She said there was never a discussion by any of the parties of any intent to create a tenancy by the entireties in the account, as opposed to a joint tenancy account with rights of survivorship.
The trial court, in dissolving the writ of garnishment, found:
1. That the Estate held by Defendant Brady and his wife in the Barnett Bank of Suncoast, N.A. bank accounts possessed the five characteristics of form as enumerated in First National Bank of Leesburg v. Hector Supply Company, 254 So.2d 777 (Fla. 1971); and
2. That Defendant Brady and his wife established, by the greater weight of the evidence, their intent to create an estate in the entities [sic] and did create such an estate, which estate is therefore exempt from garnishment proceedings brought against defendant Brady alone.
We conclude the trial court erred both as to what the evidence established and as to the burden of proof which the Bradys must sustain. Because this court can review the exact evidence (pleadings, exhibits, and depositions) which the trial court utilized in entering its order, the presumption of correctness which the appellate court normally gives to the trial court's ruling is slight. See Julian v. Julian, 188 So.2d 896 (Fla. 2d DCA 1966). In reviewing that same evidence, we are satisfied that entireties accounts were not created.
To create a tenancy by the entirety, our supreme court has observed:

*228 A viable tenancy by the entirety, with regard to either realty or personalty, must possess always and at the same time the following characteristics of form: unity of possession (joint ownership and control); unity of interest (the interests must be the same); unity of title (the interests must originate in the same instrument); unity of time (the interests must commence simultaneously); and, the unity of marriage.
First Nat'l Bank of Leesburg v. Hector Supply Co., 254 So.2d 777, 781 (Fla. 1971). In applying that type of tenancy to a bank account, the supreme court further stated:
So long as a bank account contract or signature card is drafted in a manner consistent with the essential unities of the entireties estate, and so long as it contains a statement of permission for one spouse to act for the other, the requirements of form of the estate will have been met. However, since the form will be similar to that of a joint tenancy, and since the spouses may or may not intend that a tenancy by the entireties should result, the intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties.

First Nat'l Bank of Leesburg, 254 So.2d at 781 (emphasis in original) (footnote omitted).
In this case, the Bradys failed in their proof to establish that they intended a tenancy by the entireties when the bank account was opened. Barnett did not offer such a checking account. The Bradys did not advise Barnett's employees that an entireties account was what the Bradys sought to establish. There was no discussion between the Barnett employees and the Bradys concerning whether this account would be protected from creditors of either one of the Bradys. Dr. Brady testified he did not know anything about an entireties account, and when he opened the account, he was not looking for an account where the money would be exempt from his creditors. It is hard to conceive how the Bradys could have intended to create an entireties account if Dr. Brady did not understand the significance of an entireties account. Most telling is the letter, written by Mrs. Brady, after the account was garnished where she claimed the account was owned as joint tenants with rights of survivorship. It would appear that if the Bradys had intended that these two accounts were a tenancy by the entireties, that letter was an appropriate vehicle to state such a claim.
Even if the trial court were persuaded that the Bradys established their case by the greater weight of the evidence, we believe the trial court applied the incorrect standard. Justice Dekle, in his concurring opinion in First National Bank of Leesburg, stated:
We are dealing with a type of transaction which is easily abused; in order to prevent an abuse of the entireties doctrine, it should be shown by clear and convincing proof that the parties' intention to create a tenancy by the entireties existed at the time of the acquisition of the assets in question, and that the tenancy by the entireties was not a hurried, after-the-fact creation used for the purpose of insulating funds from the legitimate claims of creditors of one of the spouses.
The statement by the majority, "* * * since the spouses may or may not intend that a tenancy by the entireties should result, the intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties," in my opinion contains the requirement for proof of intention, as discussed above.
First Nat'l Bank of Leesburg, 254 So.2d at 782 (Dekle, J., concurring). We are convinced that the standard of clear and convincing evidence is the burden of proof which the supreme court intended to place upon a married couple who attempt to exempt their bank account from the claim of a creditor of one spouse.
We reverse the trial court's order dissolving the writ of garnishment and remand for further proceedings consistent with this opinion.
*229 FRANK, A.C.J., concurs.
PATTERSON, J., dissents with opinion.
PATTERSON, Judge, dissenting.
I respectfully dissent. Both Dr. Brady and his wife testified that they intended to have a survivorship account that they would own as "husband and wife." In my view, the totality of the evidence together with the specific intent to own the account as "husband and wife" resulted in a tenancy by the entireties by operation of law, even though the Bradys were ignorant of the precise legal terms used to describe that unique form of ownership. Because of the manner in which the evidence was presented to the trial judge, the majority correctly points out that his ruling does not come to us with the same presumption of correctness as if he had had the opportunity to observe the demeanor of the witnesses when they testified. Nonetheless, his ruling does carry with it a presumption of correctness, even if slight. I would therefore affirm.
NOTES
[1] From the opening of the first account until the date of garnishment, the Bradys had no other bank accounts. They used the accounts to pay for all of their expenses, including groceries, joint stock purchases, investments, and payment of joint taxes.

Both Dr. Brady and his wife work full time in his dental offices and neither received a salary. Any profits realized from the dental practice were deposited into the accounts to be used for the Bradys' living expenses. Additional sources of revenue deposited into the accounts were from dividends received from joint stock and jointly-held publicly traded stock, as well as rents received from their jointly-held real property.