710 So.2d 608 (1998)
BEAL BANK, SSB, Appellant,
v.
ALMAND & ASSOCIATES, etc., et al., Appellees.
No. 97-944.
District Court of Appeal of Florida, Fifth District.
March 27, 1998.
Order Certifying Question June 5, 1998.
Alan M. Weiss and Scott D. Makar of Holland & Knight, L.L.P., Jacksonville, for Appellant.
William G. Cooper and Tracy K. Arthur of Toole, Beale & Cooper, P.A., Jacksonville, for Appellees.
PER CURIAM.
The issue in this case is whether bank accounts belonging to Amos F. Almand, Jr. and his wife and bank accounts belonging to Amos Almand, III and his wife in various financial institutions deposited under various agreements with those institutions are subject to execution by creditors of only the husbands. For the reasons stated in the following opinions, we all agree that the Merrill Lynch account is subject to execution; we all agree that the salary account deposited in Compass Bank is not subject to execution; a majority holds that the accounts in the Barnett Bank and SouthTrust Bank in the names of Almand, Jr. and his wife are subject to execution; and a majority holds that the remaining accounts are not subject to execution.
AFFIRMED in part; REVERSED in part, and REMANDED.
COBB, J., concurs in part, dissents in part with opinion.
*609 W. SHARP, J., concurs in result with opinion.
HARRIS, J., concurs in part, dissents in part with opinion.
COBB, Judge, concurring in part, dissenting in part.
The issue in this appeal, as noted by the per curiam opinion, is whether bank accounts the appellees Amos F. Almand, Jr. and Amos F. Almand, III held jointly with their respective spouses, Doris and Sue Almand, were held as tenancies by the entireties (and therefore insulated against garnishment by a judgment creditor of the two husbands) or simply as joint tenancies with the right of survivorship.
The burden at the hearing below was on the Almands to show that the joint spousal accounts at issue were created and held with the intent that they were tenancies by the entireties. See First National Bank of Leesburg v. Hector Supply Company, 254 So.2d 777, 781 (Fla.1971).[1] Thus, it was incumbent upon the Almands to establish the five characteristics of form in regard to a viable tenancy by the entireties: unity of possession, unity of interest, unity of title, unity of time, and unity of marriage. First National Bank of Leesburg at 781; Snyder v. Dinardo, 700 So.2d 726 (Fla. 2d DCA 1997).
In a tenancy by the entireties each spouse is deemed to own and control the entire estate rather than a divisible share. Bailey v. Smith, 89 Fla. 303,103 So. 833, 834 (1925). In such a tenancy, neither spouse, acting alone and without the acquiescence and approval of the other spouse, can sever or convey his or her interest in the property. Bailey, 103 So. at 834. The right to alienate or disburse the property without spousal consent is characteristic of a garden variety joint tenancy as distinguished from a tenancy by the entireties. Bailey; Sitomer v. Orlan, 660 So.2d 1111, 1113 (Fla. 4th DCA 1995).[2]
The nature of a tenancy by the entireties was delineated in Bailey:
Where property is acquired specifically in the name of both husband and wife, they become seized of the estate thus granted per tout et non per my, and not as joint tenants or tenants in common. The estate thus created is, however, essentially a joint tenancy, modified by the common-law doctrine that the husband and wife are one person. Upon the death of one spouse the entire estate goes to the survivor, but the survivor takes no new estate, since there is a mere change in the person holding, and not an alternation in the estate held. Neither spouse can alien or forfeit any part of the estate without the assent of the other so as to defeat the right of the survivor. There can be no severance of the estate by the act of either, and no partition of the lands during their joint lives. This is the common-law doctrine established in England and in the Unites States, with the exception of one or two jurisdictions.

At the hearing below, Almand, Jr. testified as to accounts held jointly with his wife, Doris, at Barnett Bank, Southtrust Bank and Compass Bank. He said that all three accounts were opened with his wife at the same time, and that either he or Doris could draw money out of the accounts. The accounts were used for personal and business purposes. He testified he had never heard of an estate by the entireties and that his intent at *610 the time of opening the accounts was to create a joint tenancy with the right of survivorship. He further testified that had he understood the terms and conditions of his Barnett Bank account in regard to joint tenancy (as opposed to a tenancy by the entireties) at the time he opened the account, he probably would not have opened it. Doris Almand did not testify at all.
The bank records of the three banks with Almand, Jr.'s accounts all indicated that the accounts were designated as "Joint." A Barnett Bank brochure containing the rules and regulations governing the Almand account there had the following provision:
16. Ownership of Account and Transfer of Ownership. If the account is designated a JOINT account, or if the names of two or more owners are joined by the word "or" or "and" on the signature care or in the title of the account, the Customer agrees that all sums now or hereafter deposited in the account are and shall be joint property and owned by the Customer and any co-owners of the account as joint tenants with the right of survivorship and not as tenants in common or as tenants by the entireties.... Even if the Bank at the Customer's request titles the Customer's account as "Tenants by the Entireties" or receives oral or written notice that the Customer intends to treat the funds as being held as such, the Customer agrees that as between the Customer and the Bank, the Bank may treat the account like any other joint account and subject to all the terms and provisions set forth above.
The Compass Bank account was titled as "Almand, Doris W. or Almand, Amos." The Southtrust Bank account of Almand, Jr. and his wife provided in the terms of their Deposit Agreement that "the depositors own this account as joint tenants with the right of survivorship, unless another manner of ownership is specifically set forth in connection with the account legal title on this card." The account's "legal title" is stated as "Amos F. Almand, Jr. or Doris J. Almand JT TEN."
The testimony of Almand, III was not essentially different from that of Almand, Jr. He testified as to the two accounts that he and Sue had at the Compass Bank that the accounts belonged to both of them and that "all the monies are available to either of us" and that both "have equal access to it." In respect to a third Compass account that the Almands owned with another couple, the Freedmans, Almand testified that any one of the four joint owners could withdraw funds. A fourth Compass account was termed by Almand as a "head of the household" account and served as a depository for his salary. This latter account was only in his name.
In regard to his understanding of the nature of the accounts at the Compass Bank, Almand testified:
Once again, I don't have a clear understanding of the law as it relates to joint tenants or tenants by the entireties. Obviously, since this case has come up, I've been, you know, schooled on it and briefed on it and I now have a better understanding. My understanding was, from what the bank had told me, was joint tenants with the rights of survivorship was, basically, the same thing as tenants by the entireties.
* * * * * *
My intent was to open this account where the monies would belong to the two of us and that either party sign for any or all of the monies .... my intent was to have the monies belong to both parties and have equal access to that money.
Almand testified that it was his understanding that he could withdraw the funds any time he wanted to and was free to do so without any discussion with Sue. He also said that, since Sue's name was on the account, she could write a check and "take it all out." In regard to one Merrill Lynch account, Almand testified that his wife's name was added later after he had opened the account, thereby negating one of the requisites for a tenancy by the entireties. The trial court's error in regard to this account was conceded at oral argument by counsel for the appellees. Sue Almand did not testify at the hearing.
Bank records at the Compass Bank for the accounts owned by Almand, III and his wife showed that they were each designated as a "multiple party account," which meant that *611 the parties owned the account "in proportion to net contributions unless there is clear and convincing evidence of a different intent."
The Almands rely heavily on the Florida Supreme Court case of First National Bank of Leesburg. In that case, as in the instant case, a judgment creditor of a husband (Peterson) was seeking to garnish a bank account which he and his wife held jointly. The Florida Supreme Court reversed the district court which had determined, as a matter of law, that the account could not be an estate by the entireties since either the husband or the wife could individually alienate the account without the joinder of the other. This preexisting concept was modified by the Florida Supreme Court because of the enactment of a statute which allowed for the passage of powers of attorney between spouses. Said the court:
If this is allowed by statute, then we perceive no reason why the statute cannot coalesce with the tenancy by the entirety so as to allow one spouse to draft checks in behalf of both. So long as a bank account contract or signature card is drafted in a manner consistent with the essential unities of the entireties estate, and so long as it contains a statement of permission for one spouse to act for the other, the requirement of form of the estate will have been met. However, since the form will be similar to that of a joint tenancy, and since the spouses may or may not intend that a tenancy by the entireties should result, the intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties.

The court noted that the Petersons' signature card was compatible with the form required of an estate by the entireties in a bank account. Since the signature card did not expressly identify the account as one held by the entireties, however, the court remanded the case to the trial court for determination of the intention of the Petersons in regard to this account.
The First National Bank of Leesburg opinion simply does not support the trial judgment in the instant case. First and foremost, the unequivocal and uncontradicted testimony of both Amos Almand, Jr. and Amos Almand, III was to the effect that in each marriage either spouse, acting alone and without the knowledge of the other, could withdraw the funds in any of the accounts for any purpose. There was no testimony whatsoever that such purpose must be one related to the marital unit, or even that such purpose would be one approved by the non-withdrawing spouse. For all that appears from the testimony in this case, that purpose could be one adamantly opposed by the other spouse, who would be without recourse. Such an alienation of the funds of a joint account so as to defeat the rights of the other spouse is completely inconsistent with the theory underlying a tenancy by the entireties, as explained in Bailey. Bailey was modified, but not repudiated in toto, by First National Bank of Leesburg. That modification related to the authority of one spouse, acting for the other, to withdraw funds from an account; it did not alter the inherent rights and obligations of tenants by the entireties, each to the other, in respect to those funds.
The majority opinion in First Nat Bank of Leesburg specifically adopts the reasoning in Madden v. Gosztonyi Savings & Trust Co., 331 Pa. 476, 200 A. 624, 630, 117 A.L.R. 904 (1938). The following excerpt from Madden makes it clear that the Almand accounts do not qualify as tenancies by the entireties:
Where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn is impressed with the entirety provision that it is the property of both, and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to the consequences.
Secondly, there was no evidence, much less clear and convincing evidence, that the various accounts were created with the intent of the parties that they were to be held as tenancies by the entireties. The husbands both testified that they did not know what such tenancies were at the time they were created, and the wives did not testify at all. *612 Had the husbands attempted to testify that the intent of their wives at the time the accounts were opened was to create tenancies by the entireties, such testimony clearly would have been inadmissible.
Judge Harris' opinion has adopted the dissenting view expressed by Justice Boyd in First National Bank of Leesburg  i.e., that joint ownership of personalty by a husband and wife creates a strong presumption that such property is taken and held by the entireties absent a clear showing to the contrary on the face of the instrument, as is the case with real property. Justice Boyd's opinion shows that he would not have remanded for a determination as to the intent of the Petersons. His view, however, has yet to be adopted by the Florida Supreme Court, and the majority view in First National Bank of Leesburg, as expressed by the opinion of Justice Carlton, remains the controlling lawand that law is reflected by the language in Madden. Given the existence of the requirements of form consistent with the essential unities, the intent of a husband and wife to create a tenancy by the entireties in a joint account remains a matter for factual determination and cannot rest solely on a presumption unsupported by the written instruments creating the accounts. There is no logical or historical imperative for insulating a judgment debtor from the claims of his creditor under the guise of a unitary marital interest in a bank account if that unitary interest is subject to termination at any time at the whim and caprice of the debtor. Certainly, there is no such moral imperative. A marital facade that does not protect the marriage should not be an available haven for debtors when there is no such haven available for unmarried debtors participating in a joint tenancy.
Accordingly, I agree with the per curiam opinion that the Merrill Lynch account was not held as a tenancy by the entireties and was subject to garnishment; I also agree that the salary account solely in the husband's name in the Compass Bank was protected by his homestead claim. I also agree with the per curiam opinion that the Barnett and Southtrust accounts are subject to garnishment, although not for the same reason that Judge Sharp utilizes in respect to those two accounts. I dissent in regard to the remaining accounts and would hold that they are also subject to garnishment by Beal Bank.
W. SHARP, Judge, concurring in result.
I agree and concur with Judge Harris' opinion in all regards, except for the Barnett joint account in the names of Almand, Jr. and his wife, Doris, and the SouthTrust Bank account also in the names of Almand, Jr. and his wife, Doris because of the express language contained in the account documents. Those two accounts are, in my view, truly joint accounts and not tenancies by the entireties. Thus, they are subject to garnishment by the judgment creditor of one of them (i.e., in this case Almand, Jr.), to the extent of his equitable ownership of the funds in the accounts. Ginsberg v. Goldstein, 404 So.2d 1098 (Fla. 3rd DCA 1981).
Florida's common law concerning when bank accounts are held as a tenancy by the entireties by spouses is relatively conflicting and confusing. As one writer has pointed out, the leanings or bias of the appellate courts writing on this subject differs where the object of the lawsuit is to allow a surviving spouse to trace and claim the proceeds of a bank account into other assets or properties, or to make claims against an estate, or as in this case, to allow a creditor of one spouse to reach funds held in the account.[1] In the cases dealing with levy or garnishment by a creditor of one spouse, the courts appear to tilt towards finding that a tenancy by the entireties exists, and thus no funds in the account can be reached. See Miller v. Rosenthal, 510 So.2d 1127 (Fla. 2d DCA 1987).
The concept that a husband and wife can own funds in a bank account as an estate by the entireties commenced in Florida with Bailey v. Smith, 89 Fla. 303, 103 So. 833 (1925). The issue in that case was whether a *613 deceased spouse could bequeath her interest in a bank account to persons other than her surviving husband. The court ruled that if the account was held by the entireties, one spouse could not sever any part of it and after the death of one the whole of the account became the property of the survivor. In explaining the nature of this tenancy, the court adopted the common and statutory laws of England. It said:
Where property is acquired specifically in the name of both husband and wife, they become seized of the estate thus granted per tout et non per my, and not as joint tenants or tenants in common. The estate thus created is, however, essentially a joint tenancy, modified by the common-law doctrine that the husband and wife are one person. Upon the death of one spouse, the entire estate goes to the survivor, but the survivor takes no new estate, since there is a mere change in the person holding, and not an alteration in the estate held. Neither spouse can alien or forfeit any part of the estate without the assent of the other so as to defeat the right of the survivor. There can be no severance of the estate by the act of either, and no partition of the lands during their joint lives.
Bailey, 89 Fla. at 306, 103 So. 833.
The court concluded that whether such an estate exists as the result of acquiring property in the names of both the husband and wife must be determined by a consideration of the nature and terms of the transaction as portraying the intent of the parties under the rules of law applicable thereto. However, the facts and circumstances in Bailey, which the court held were sufficient to create a tenancy by the entirety in the bank account, are not detailed in the opinion.
In Hagerty v. Hagerty, 52 So.2d 432 (Fla. 1951), the dispute was between the heirs of the deceased husband and the widow, as to ownership of funds in two bank accounts. The accounts were labeled joint accounts with the right of survivorship. Pursuant to the account documents, either one, or the survivor, had the power and right to withdraw funds. The husband made all of the deposits to one account but no checks were drawn against it. Both deposited funds and withdrew funds from the other account.
It was argued in that case that there was no unity of control since either spouse could withdraw funds unilaterally. The court rejected that argument, concluding that an account opened in such form did not preclude one spouse from acting for the other. It said that an account payable to the order of the husband or the wife is an expression of authority, or agency to act for both. Hagerty, 52 So.2d at 434. This feature of the joint account documentation did not defeat a tenancy by the entirety. The court also found unimportant the fact that most or all of the money deposited came from the husband. It concluded that an intent to create a tenancy by the entireties was shown on the face of the account documentation alone.
That concept was modified by later cases. In Estate of Lyons, 90 So.2d 39 (Fla.1955), the court ruled that use of the word "or," creating a joint account with right of survivorship, by itself was not dispositive of the issue whether intent to create an estate by the entireties was demonstrated. Without more evidence, the court concluded establishing the mere existence of a joint account with right of survivorship was not enough to prove intent to create a tenancy by the entireties.
Writing for the court in Winters v. Parks, 91 So.2d 649 (Fla.1956), Justice Thornal pointed out problems the courts had been faced with in cases involving claimed estates by the entirety in bank accounts. He restated the rule that in cases of joint accounts held by husband and wife, "in the absence of language showing clearly the intent of the parties one way or the other it is always appropriate to investigate the facts and circumstances leading up to and surrounding the creation of the bank account in order to determine the intention of the original depositors." (emphasis added) 91 So.2d at 652. The lower court concluded no such intent existed and the Florida Supreme Court affirmed.[2]
*614 Significantly, Justice Thornal pointed out that depositors and banks alike could make a contribution toward eliminating many of the problems of litigation which tenancy by the entireties in bank accounts were creating, "if at the outset when the account is established they would add language to the card stating clearly whether it is or is not intended to create an estate by the entirety." (emphasis added). Winters, 91 So.2d at 652.
First National Bank of Leesburg v. Hector Supply Co., 254 So.2d 777 (Fla.1971) added some additional gloss to the doctrine of bank accounts held by the entireties. The case involved a joint account with the right of survivorship. As is typical with such an account, either one could withdraw funds on his or her own signature. The court reaffirmed its pronouncement in Hagerty that the withdrawal powers would not defeat a tenancy by the entireties. However, it said that if the account documentation is a joint account with right of survivorshipa form not incompatible with a tenancy by the entiretiesmore proof of the parties' intent to create a tenancy by the entireties is necessary.
[T]he intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties.
254 So.2d at 781. Since the signature card "was compatible with the form required of an estate by the entirety in a bank account," the court remanded the case to the trial court to determine the account owners' intent.
Later cases have focused on a variety of factors and circumstances which may or may not show intent to create a tenancy by the entirety in a bank account: the source of the funds deposited;[3] tax returns filed by the parties;[4] the persons who used the account and the purposes for which funds drawn from it were expended;[5] and the affidavits or testimony of the parties or one of them that both spouses owned the account and desired it to be a tenancy by the entirety. As one writer observed,[6] it is fairly simple to have a spouse state the few words necessary to satisfy the Florida cases regarding intent to create a tenancy by the entirety. In cases involving the shielding of funds from garnishment, it may also be an open invitation to perjury.
In the instant case, the testimony at trial recited by Judge Harris in his majority opinion shows sufficient words were said to sustain the trial court's finding of intent to create a tenancy by the entirety in the simple joint accounts, to the extent that doctrine is applicable. However, in the case of the Barnett account which has language expressly stating it is not a tenancy by the entirety[7] as well as the SouthTrust account which states expressly that it is a joint account and not anything else unless expressly specified,[8] resort to extrinsic, parol evidence of intent is *615 not necessary or proper.[9]
The account statements specifying the nature of the tenancies created in the two accounts are more than a mere agreement required for the protection of the bank. The provisions concerning the right and power for one or the other to withdraw funds regardless of the ownership of the funds is what is required to protect the bank. However, the description of the kind of tenancy which is being created appears to me to be more like the form of the legal title in which real property is transferred. That form is determinative in cases involving the creation of tenancy by the entireties in real property.[10] I do not see why it should not be in cases involving personal property.
As Justice Thornal urged in the Winters' case, language added to the signature cards stating clearly whether an estate by the entirety is or is not intended to be created, should settle the issue and eliminate the necessity for litigation. In the case of these two accounts, sufficient language was added to establish the nature of the tenancy as joint and not a tenancy by the entireties. These two accounts are not drafted in a manner "consistent" with the essential unities of the entireties' estate, as required by the Hector case, because they expressly disclaim that they are accounts held by the entireties. Had these circumstances occurred in the Hector case, I do not think the court would have remanded for the taking of testimony concerning intent.
I think the instant case is similar to Terrace Bank of Florida v. Brady, 598 So.2d 225 (Fla. 2d DCA 1992). In that garnishment proceeding, it was established that a husband and wife opened an account at Barnett titled in both names (with an "or,") and it was checked as a joint account with right of survivorship. Further account documentation stated that only a joint tenancy was contemplated and a tenancy in common was specifically excluded. The husband testified (as did Dr. Almand in this case) that he did not know anything about an entireties account. In Terrace Bank, the wife testified that there was an intent to open a joint account and there had been no discussion about an entireties account.
As in the instant case, in the Terrace Bank case, Barnett Bank did not offer a tenancy by the entireties account and neither the husband and wife nor the bank personnel ever had any discussion about an entireties account, until the garnishment proceeding came along. Our sister court in that case said the Bradys failed to establish by clear and convincing evidence that a tenancy by the entireties was intended, and that they had the burden to do so. I am not sure the Florida cases support that such a high burden of proof is required in the case of a simple joint account, but I agree with it in the case of these two accounts set up with express indications that a tenancy by the entireties account was not intended.
Thus, I would affirm the trial court as to all of the accounts except for the Barnett and SouthTrust accounts. As to those accounts, I would reverse and remand to the trial court for further proceedings in keeping with the concept that they are joint accounts and not tenancy by the entireties accounts. The Almands argued below that Doris Almand is not a party to this garnishment proceeding because she was not given proper notice. It is unclear from this record whether the trial court ever ruled on their contention raised below. Obviously proper notice must be given to all named owners of a garnished account.[11] Due process requires that Doris be allowed to assert her claims of ownership to the funds in the account. See Meyer v. Faust, 83 So.2d 847 (Fla.1955); Antuna v. Dawson, 459 So.2d 1114 (Fla. 4th DCA 1984). Funds held in a joint account can only be garnished by the debtor of one of the joint account owners to the extent of the debtor's ownership of the funds.; i.e., Dr. Almand's. None of these issues has been addressed by the trial court.
*616 HARRIS, Judge, concurring in part, dissenting in part:
The issue in this case is whether the accounts deposited into various institutions by a husband and wife[1] were adequately proved to be held as tenancy by the entireties under the requirements of First National Bank of Leesburg v. Hector Supply Co., 254 So.2d 777 (Fla.1971), and were thus immune from garnishment by a creditor of only the husband. The account in Merrill Lynch lacked the unities of time and title and thus is not held as a tenancy by the entirety. It is therefore subject to garnishment to the extent authorized by Antuna v. Dawson, 459 So.2d 1114 (Fla. 4th DCA 1984). The trial court upheld the homestead claim to the salary account deposited in Compass Bank. That ruling is affirmed.
The six remaining accounts were deposited in the name of the husband and wife into accounts designated as joint tenancies with right of survivorship.[2] The deposit cards authorized either depositor to withdraw funds. Hector holds that this fact alone will not defeat a tenancy by the entireties claim so long as there is authority given by each spouse for individual withdrawals and evidence that the parties intended to create a tenancy by the entireties account at the time the account was opened.[3] The deposit cards herein (in each account) give the authority for individual withdrawals and are sufficient to meet this first requirement.
But does the record support the trial court's determination that the parties intended to establish tenancy by the entireties accounts at the time such accounts were opened? The husband testified that it was the intent in setting up the accounts that "the moneys would belong to the two of us," that they had the "same interest in the account," and that the account "belongs to both of us as a whole." Even though the husband testified that he was unfamiliar with the term "tenancy by the entireties," a point stressed *617 herein by the bank, such is not a requirement of Hector so long as the five unities are present and the parties intend to create an account with the attributes of a tenancy by the entireties estate.
Justice Carlton's majority in Hector recognizes that the unities of the joint account with right of survivorship are so similar to the unities of the tenancy by the entireties that it is possible that a married couple might intend to hold their interest in the joint account separateundivided but nevertheless divisible. This might be particularly true in situations of second marriages in which there are children from the prior marriages. Therefore, there must be some evidence in the record from which a judge can find that the parties intended to each own the entire account in order to satisfy Hector.
But the Hector court did not intend to set up an obstacle course for married couples to run in order to set up a tenancy by the entireties account. Such couples should not be required to be experts in or even knowledgeable of the law of estates in order to take advantage of the benefits of the tenancy by the entireties estate. The primary distinction between tenancy by the entireties and other ownership estates is that in a tenancy by the entireties each spouse owns the entire account subject to the other spouse's expectancy.[4] It is because of this unique ownership interest that one spouse may not dispose of the property without the joinder or the consent of the other spouse. Thus, the inability of one spouse to unilaterally dispose of the property (money in the account) is not an "element" of the estate, it is the legal consequence of it.[5] Therefore, the only intent necessary to be proved in order to establish a tenancy by the entireties account is the intent that each spouse owns the entire account and not a divisible portion thereof.[6] There is sufficient evidence in this record to sustain the trial court's determination that there was such intent in this case.
Nor is the fact that only the husbands testified as to the intent of the parties is fatal to their case. Certainly it would have been more prudent to have had the wives confirm such intention, but the unchallenged testimony of the husbands that in setting up the accounts it was the intent of the parties to each own the entire account was believed by the trial court and is sufficient; see Marine Midland BankNew York v. Arms, 409 So.2d 215 (Fla. 4th DCA 1982). See also Gibson v. Marr, 395 So.2d 1278 (Fla. 4th DCA 1981).
I would, therefore, reverse as to the Merrill Lynch account and affirm the balance of the trial court's judgment.

ON MOTION FOR CERTIFICATION
HARRIS, Judge.
On motion from Beal Bank, SSB, we certify the following question to the supreme court as a question of exceptional importance:
1. IN A CASE IN WHICH THE CREDITOR OF ONE SPOUSE SEEKS TO *618 GARNISH A BANK ACCOUNT HELD BY THAT SPOUSE JOINTLY WITH HIS OR HER SPOUSE, AND THE DOCUMENTS ESTABLISHING THE JOINT ACCOUNT (WITH THE RIGHT OF SURVIVORSHIP AND RIGHT OF ONE PARTY TO THE ACCOUNT TO WITHDRAW FUNDS) DISCLAIM IT IS HELD AS A TENANCY BY THE ENTIRETIES, MAY THE SPOUSE CLAIMING IT IS HELD AS A TENANCY BY THE ENTIRETIES RESORT TO EXTRINSIC EVIDENCE TO PROVE IT WAS INTENDED TO BE HELD AS TENANCY BY THE ENTIRETIES, AND WHAT IS THE PROPER BURDEN OF PROOF WHICH THE SPOUSE MUST CARRY TO PROVE THE ACCOUNT IS HELD AS TENANCY BY THE ENTIRETIES?
2. WOULD THE ANSWER TO THE ABOVE QUESTION BE THE SAME IF THE DOCUMENTS ESTABLISHING THE ACCOUNT MERELY SHOWED IT IS A JOINT ACCOUNT WITH RIGHT OF SURVIVORSHIP AND RIGHT OF ONE PARTY TO THE ACCOUNT TO WITHDRAW FUNDS?
COBB and W. SHARP, JJ., concur.
NOTES
[1] According to the concurring opinion of Justice Dekle, this showing should be made by clear and convincing evidence. First National Bank of Leesburg at 782.
[2] In a recent bankruptcy court opinion the concept of an estate by the entireties in personalty in Florida was considered in In re Campbell, 214 B.R. 411 (Bankr.M.D.Fla. 1997):

In Florida, a viable tenancy by the entireties estate is created in either personalty or realty when the unities of possession, interest, title, time, and marriage are satisfied. Stanley, 122 B.R. at 604. If the matter involves personalty, the intent to create an entireties estate, at the time of acquisition, must be shown. Id. Such a requirement alleviates concern that the debtor will claim the personalty as entireties property so as to insulate it from claims of creditors of one of the spouses. Id. The burden of proof is not met solely by the debtor's, or the non-filing spouses's, testimony at the hearing on the objection to the claimed exemption. Id.; see also In re Spatola, 65 B.R. 49 (Bankr. S.D.Fla.1986). Rather, the debtor must provide a quantum of documentary proof establishing that an entireties estate was intended when the personalty was acquired. In re Allen, 203 B.R. 786, 791 (Bankr.M.D.Fla.1996).
[1] See John Starling, Tenancy By the Entireties in Florida, 14 U. Fla. L.Rev. 111 "(1961). Compare Winters v. Parks, 91 So.2d 649 (Fla.1956) with Lerner v. Lerner, 113 So.2d 212 (Fla. 2d DCA 1959) and Katz v. Katz, 666 So.2d 1025 (Fla. 4th DCA), rev. denied, 675 So.2d 927 (Fla.1996).
[2] In this case the widow was seeking to trace proceeds from a joint account into other properties. She was a much younger second wife, she made no deposits or withdrawals from the account during the marriage, and her husband had used the account to make personal investments.
[3] See Snyder v. Dinardo, 700 So.2d 726 (Fla. 2d DCA 1997); Marine Midland BankNew York v. Arms, 409 So.2d 215 (Fla. 4th DCA 1982).
[4] Gibson v. Marr, 395 So.2d 1278 (Fla. 4th DCA 1981).
[5] See Sitomer v. Orlan, 660 So.2d 1111 (Fla. 4th DCA 1995).
[6] Judge Jerry Parker, Garnishment of the Married Couple's Bank Account; A Call for Revised Signature Cards, 53 Fla. Bar. J. 500 (Oct.1979).
[7] A bank brochure containing rules and regulations regarding the account contained the following provision:

16. Ownership of Account and Transfer of Ownership. If the account is designated as a Joint account, or if the names of two or more owners are joined by the word "or" or "and" on the signature card or in the title of the account, the customer agrees that all sums now or hereafter deposited in the account are and shall be joint property and owned by the Customer and any co-owners of the account as joint tenants with the right of survivorship and not as tenants in common or as tenants by the entireties ... Even if the Bank at the Customer's request titles the Customer's account as "Tenants by the Entireties" or receives oral or written notice that the Customer intends to treat the funds as being held as such, the Customer agrees that as between the Customer and the Bank, the Bank may treat the account like any other joint account and subject to all the terms and provisions set forth above.
[8] The title on the card is "Amos F. Almand, Jr. or Doris J. Almand, JT TEN."
[9] But see In re Guardianship of Medley, 573 So.2d 892 (Fla. 2d DCA 1990).
[10] Losey v. Losey, 221 So.2d 417 (Fla.1969); Hargett v. Hargett, 156 Fla. 730, 24 So.2d 305 (1946); Knapp v. Fredricksen, 148 Fla. 311, 4 So.2d 251 (1941); In re Silvian's Estate, 347 So.2d 632 (Fla. 4th DCA 1977).
[11] § 77.07(2), Fla. Stat.; Beardsley v. Admiral Insurance Co., 647 So.2d 327 (Fla. 3d DCA 1994).
[1] There are six accounts at issue in this opinionthree owned by the father and his wife and three owned by the son and his wife. Because the argument and the evidence are substantially the same as to each couple and as to each account, no distinction will be made.
[2] The Bank (and Judge Sharp) points out that the Barnett account specifically provided that the account would be joint tenancies with right of survivorship and not tenancies by the entireties. But the Barnett account specifically recognized that such provision was only as between the bank and the customer. I disagree with Judge Sharp that as between the depositor and a third party that the depositor is bound by the language on the signature card. As stated in In re Guardianship of Medley, 573 So.2d 892, 900 (Fla. 2d DCA 1990): "Those provisions of the signature cards in this case are alleged to have been only for the protection of the savings and loan associations and for the convenience of the parties and have not affected the kind of ownership interests held in the account funds. Those allegations reflect the law in Florida." Most often, issues such as this come up when one of the parties to such account (usually after the death of the other party) claims in reliance on the agreement. In this case, the husbands' creditor is not a third party beneficiary of the depositors' agreement with the bank and can not claim under it. Thus the parol evidence rule is inapplicable. The only purpose of considering the signature card in these proceedings is to determine the intent of the depositors at the time they created the account and the depositors should be able to testify as to that intent. A court has not yet held that a provision such as the one in the Barnett account is unrebuttable as between the depositor and third persons. Indeed, Hector speaks only in relation to the case in which the parties specifically designate the account as tenancy by the entireties: "[T]he intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties." I submit that regardless of the depositors' relationship with the bank, as between third parties, the question remains as to whether the depositors intended that each own all of the account. If they did, an estate by the entireties was created. the same logic would apply to the SouthTrust account.
[3] The Hector court held: "So long as a bank account contract or signature card is drafted in a manner consistent with the essential unities of the entireties estate, and so long as it contains a statement of permission for one spouse to act for the other, the requirements of form of the estate will have been met." 254 So.2d at 781. Since, in our case, the account was set up in such a manner that the five unities were present and the mutual consent for individual withdrawals was given, the proper form is present. The court went on to provide: "However, since the form will be similar to that of a joint tenancy, and since the spouses may or may not intend that a tenency by the entireties should result, the intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties." (Emphasis theirs.) Id.
[4] See Antuna v. Dawson, supra.
[5] Judge Cobb is overly impressed with the fact that the husband testified that the wife was free to withdraw the funds (as was he) at her discretion and without consultation with him. That purpose and that authority was conveyed in the signature card. The dissent sees this as authority for one spouse to "defeat the rights of the other spouse" and thus prevent the formation of a tenency by the entireties account. But that reasoning is pre-Hector and ignores the holding of the Hector majority. After Hector, even if the account authorizes individual withdrawals, still it is a tenency by the entireties account if the parties intend to each own all of the account.
[6] In its brief, the Bank cites the following language from Sitomer v. Orlan, 660 So.2d 1111, 1113 (Fla. 4th DCA 1995): "A unique aspect of a tenancy by the entirety, is that each spouse is `seized of the whole or the entirety, and not a share, moiety, or divisible part'.... The important attribute separating a joint tenancy from tenancy by the entirety is a that in a tenancy by the entirety neither spouse may sever or forfeit any part of the estate without the assent of the other so as to defeat the right of the survivor." The Bank then argues that since the evidence reveals that each spouse had the right to disburse all the funds from the account, a tenancy by the entirety could not have been intended. What the Bank ignores, of course, is that by executing the signature cards expressly granting such authority to the other spouse, the necessary "assent" envisioned by Sitomer is present. It should be noted, however, that although the signature cards authorize a voluntary withdrawal by an individual spouse, there is no authority given to subject the interest in the account owned by one spouse to the involuntary seizure by the creditors of the other spouse.