SWANSON, J.,
dissenting on denial of hearing en banc.
I write this “dissental”[3] from the Court’s decision to deny en banc eonsider- *756 ation pursuant to Florida Rule of Appellate Procedure 9.331. I elect to write because the inability of the three-judge panel to provide a clear analysis of the parental bypass appellate review standard warrants en banc consideration. Further, the failure of our whole court to address and give deference to the proper appellate standard of review concerning parental notification is a mistake.
I agree with the views expressed by Chief Judge Kozinski when he wrote:
“Cases arguably warranting en bane review are those in which the stakes are unusually high or the law is especially unclear.” [FN 63] It does honor to the law, promotes justice, and serves the interests of an informed public when citizens learn that appellate judges have given difficult and important cases exacting scrutiny — not just one judge or even the three-judge panel, but an entire court of appeals.[4]
The “luck of the draw” did not place me on this panel.[5] Accordingly, I refrain from detailed comment on the merits as addressed by the divergent opinions of the three-judge panel.[6] Nonetheless, In re: Jane Doe 13-A is that case where “the stakes are unusually high” and “the law is especially unclear.” It is worthy of consideration by the entire court for the reason that the 2011 amendment to the Parental Notice of Abortion Act codified a clear and rigorous appellate standard of review which should not be diminished.
At stake here is not the minor child Doe’s right to choose to terminate her pregnancy. All would undoubtedly agree the abortion most probably has taken place and Doe was able to make that choice without requirement that her parents be informed of the decision.
At this point, what is at stake is one of the foundational principles of judicial restraint: that an appellate court will not substitute its view of the facts for that of the trial court when the trial court enjoys the vantage point of observing the demeanor and credibility of the witnesses. This has even greater implications in the present case, since the 2011 amendment to the Parental Notice of Abortion Act imposed a highly deferential standard of appellate review. § 390.01114(4)(b)2., Fla. Stat. (2013). As Judge Makar observes, no appellate court has yet explored the application of this standard,[7] or the “outer limits” of the deference it imposes,[8] making the issue one of first impression in Florida. The proper employment of this standard of review is critical because the ex parte nature of the judicial waiver proceeding deprives parents of any opportunity to be heard, even though they have a fundamen *757 tal constitutionally protected interest in the care and upbringing of their children. I endorse Judge Makar’s reference to Justice Kennedy’s remarks in Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 520, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990), as underscoring this principle.[9] An outlying opinion from this Court, consisting of two disparate concurring opinions and a vigorous dissent does little to protect these interests or serve to enlighten the bench and bar. Instead, it adds to confusion, since the opinion provides no guideposts for future similar appeals.
For these reasons, I am firmly of the view that en banc consideration of this case is critical. This case is of “exceptional importance [and] necessary to maintain uniformity in the court’s decisions.” Fla. R.App. P. 9.331. Accordingly, I submit my dissental to the denial of the motion for en banc review.
MAKAR, J.,
commenting on the denial of hearing en banc.
Whether we accepted this case for en banc review or not, we fall short by releasing a decision with no precedential majority opinion. Of the thousands of words we three panel judges have written in our separate opinions (putting aside dissentals, the concurral, and this commental), not one has any precedential value: only the word “reversed” in the per curiam opinion announcing the result of the panel’s handiwork does. Nothing else is decided; the law is left unclear. This is an awkward result,[10] one that en banc review could correct, but only if eight of us could agree on how the legislature intended appellate courts to apply the 2011 statutory revisions.
The lack of a unified interpretation of the statute destabilizes the law of our District, there being no binding legal reasoning for the result reached and thereby no direction for future cases.[11]
The parties,[12] though clearly knowing who won and lost, do not know with certainty which legal principles prevailed and will be applicable in future cases. In this regard, an additional institutional function of opinion writing is to “at all times consider the effect the opinion will have on [the court] as an institution charged with responsibilities for setting precedent and for defining law.” Thus, a court’s written opinion must be written with consideration of its consequences in future cases, its consistency with legal precedents and principles, and its coherence to those who are governed by it and turn to it for guidance.[13]
Given a lack of this coherence, not only must litigants, lower courts, and the general public speculate on how the judicial bypass statute is to be applied, members of future three judge panels assigned to *758 such cases in our District will be left to their own individual interpretations of the law, making it likely that outcomes will have elements of serendipity and unpredictability. The resulting “uncertainty leaves open the potential for future litigation to depart from the pluralities’ opinions and follow another path.”[14]
The results of parental bypass cases, in most instances, are never publicly known and, if resolved on appeal via an unpublished order, are not within the awareness of non-panel judges. This case differs because the panel members prepared three written opinions that were pre-released internally and subject to close scrutiny, resulting in a request for an en banc vote. When a case like this one surfaces that creates the potential to resolve uncertainty in the law or provide a clearer understanding of a statute’s application, but exits the appellate system with even greater uncertainty and a potentially more unpredictable application, that is not a good thing. And when no majority opinion exists, and no legal question has been certified,[15] appellate review in the Florida Supreme Court is foreclosed, ensuring that uncertainty and doubt continues.
A final note. When invited to comment on a recent Florida Supreme Court case in which I was the losing advocate, I wrote— not about the merits — but about that court’s inability to achieve a majority position.[16] I bemoaned the court’s issuance of two three-judge plurality opinions, a concurring in result only opinion, and a dissent, which resulted in no precedent. Sound familiar? I wrote the article from the perspective of an appellate lawyer, but from the judicial side I now see how things work, which are not much different from when any fifteen people get together to make a group decision. Expecting seven justices, let alone fifteen district judges, to herd themselves into voting blocs producing at least one majoritarian legal position is overly-optimistic, some might say Pol-lyannaish. “Courts frequently fail to achieve a majority vote in closely divided cases, so it cannot be considered a judicial sin to fail to achieve a precedential opinion.” [17] But hope springs eternal, which is why cases such as this one deserve greater judicial effort to produce a precedent versus just a result.

. A "dissental” is a colloquial term recently coined by Judge Alex Kozinski, Chief Judge of *756 the United States Court of Appeals for the Ninth Circuit. See In re Corrinet, 654 F.3d 1141, 1146 (9th Cir.2011) (“Kozinski, C.J., dissental.”). See generally Alex Kozinski & James Burnham, I Say Dissental, You Say Concurral, 121 Yale L.J. Online 601 (2012).

. Kozinski & Burnham, supra note 1, at 611-12 (quoting Indraneel Sur in How Far Do Voices Carry: Dissents from Denial of Rehearing En Banc, 2006 Wis. L.Rev. 1315, 1318.)

. Id. at 607.

. The ramifications of this case are far reaching and impact future Jane Does, their parents, and their unborn children. Insofar as I am concerned, further discussion by me about the merits, or lack thereof, of dissental opinions is a distraction. I leave that for another time. (Judge Kozinski would go further, observing that "[d]issentals have become a way for judges to express a view on the merits of important cases decided by their courts when the luck of the draw does not assign them to the original three-judge panel.” Id.)

. Slip op. at 38.

. Id. at 45.

. Id. at 54-55.

. A district court decision consisting of three divergent opinions with a fourth opinion explaining the result is not unprecedented, but rare. See, e.g., Beal Bank, SSB v. Almand & Assocs., 710 So.2d 608 (Fla. 5th DCA 1998), decision approved in part, quashed in part, 780 So.2d 45 (Fla.2001).

. Scott D. Makar, Browning v. Florida Hometown Democracy, Inc.: A Case Study in Judicial Opinion Writing, 41 Stetson L.Rev. 477, 494-95 (2012) ("This result is unfortunate for the victors in the litigation because they won the battle by having the statute declared unconstitutional, but they did not convince a majority of a central rationale for doing so.”) (hereafter Judicial Opinion Writing).

. Of course, there is only one party in this case.

. Judicial Opinion Writing, supra note 2, at 494 (footnotes omitted).

. Id. at 495.

. The Fifth District panel certified questions in Beal Bank, SSB v. Almand & Associates, 710 So.2d 608 (Fla. 5th DCA 1998), which the Florida Supreme Court rephrased and answered in 780 So.2d 45 (Fla.2001)

. Judicial Opinion Writing, supra note 2, at 476. The feature in Stetson Law Review is known as "Last Words on Recent Developments." The case was Browning v. Florida Hometown Democracy, Inc., PAC, 29 So.3d 1053 (Fla.2010).

. Judicial Opinion Writing, supra note 2, at 495.