DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

LINDA LOUMPOS n/k/a LINDA MARAGOUDAKIS,

Appellant,

v.

BANK ONE; NCO FINANCIAL SYSTEMS, INC.; RAYMOND JAMES &
ASSOCIATES, INC.; and DOVE INVESTMENT CORP., Judgment
Assignee,

Appellees.

No. 2D2022-3908
_____

August 2, 2024

Appeal from the County Court for Pinellas County; Lorraine Kelly, Judge.

John D. Goldsmith of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill &
Mullis, P.A., Tampa, for Appellant.

Hugh Shafritz, Aaron F. Miller, and Maxine Noel of Shafritz and
Associates, PA, Delray Beach, for Appellee Dove Investment Corp.,
Judgment Assignee.

No appearance for remaining Appellees.

KELLY, Judge.

 In this appeal from an order allowing a creditor of one spouse to
garnish a bank account titled in the name of both spouses, we are asked
to decide whether *Beal Bank, SSB v. Almand & Associates*, 780 So. 2d 45
(Fla. 2001), abrogated the common law requirements for creating a

tenancy by the entirety if the account's signature card expressly designates the account as a tenancy by the entirety. We hold that it did not.

A creditor of appellant Linda Loumpos sought to garnish a bank account titled in her name and the name of her husband, Peter Maragoudakis. Maragoudakis had opened the account in his name only in February 2017. In October 2017, he and Loumpos, whose married name is Maragoudakis, executed new signature cards that stated the account belonged to "Peter Maragoudakis & Linda Maragoudakis, Ten by Enty." They also checked the "Joint Tenants by Entirety" box on the signature card. When a creditor of Loumpos sought to garnish the bank account, Loumpos claimed it was exempt because it was an entireties account, and the debt belonged solely to Loumpos. Loumpos's creditor argued the account did not qualify as an entireties account because Loumpos's name was not on the account when her husband originally opened it. Instead, Maragoudakis added Loumpos to the account several months after he opened the account. Thus, the creditor argued, the unities of time and title were not present.

Loumpos did not dispute that the unities of time and title were not present. Instead, relying on *Beal Bank,* she argued that if a bank signature card expressly designates an account as an entireties account, that ends the inquiry as to the form of ownership of the account and the absence of one of the unities does not preclude the account from being an entireties account. She also relied on section 655.79(1), Florida Statutes (2017), arguing that it codified *Beal Bank* and extended its holding to all spousal accounts by providing that all spousal accounts shall be considered as tenancies by the entireties unless otherwise specified in writing, regardless of the presence or absence of the common

2

law requirement of unities.  The trial court rejected these arguments, found that the unities of time and title were still necessary to create an entireties account, and it rejected her claim of exemption.  We believe the trial court was correct.

Before detailing our reasons for concluding that Loumpos has misread *Beal Bank* and that her interpretation of section 655.79(1) is not supported by the statute's text, some historical perspective on the pre-*Beal Bank* case law pertaining to ownership by the entireties is helpful. "An estate by the entireties is an estate held by husband and wife together so long as both live, and after the death of either by the survivor so long as the estate lasts."  *Bailey v. Smith*, 103 So. 833, 834 (Fla. 1925), *receded from on other grounds by Beal Bank*, 780 So. 2d at 59.  "It is an estate held by husband and wife by virtue of title acquired by them jointly after marriage."  *Id.*  The essential characteristic of the estate is that each spouse is seized of the whole or the entirety—not just a share.  *See id.*  Florida has long recognized that this common law doctrine is in force in this state both as to real and personal property.  *See id.* at 834-35; *see also First Nat'l Bank of Leesburg v. Hector Supply Co.*, 254 So. 2d 777, 779-80 (Fla. 1971), *receded from on other grounds by Beal Bank*, 780 So. 2d at 59.  Because each spouse owns the whole rather than just a share, the creditor of one spouse cannot reach the entireties property to satisfy the debt of that spouse.  *See Beal Bank*, 780 So. 2d at 53.

Under the common law, a viable tenancy by the entirety possessed six characteristics:

> (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of

3

marriage (the parties must be married at the time the property became titled in their joint names).

*Id.* at 52 (footnote omitted); *see also Hector Supply*, 254 So. 2d at 781 (explaining that a viable tenancy by the entirety "must possess always and at the same time" the unities of possession, interest, title, time, and marriage). However, a finding that the unities of formation were present did not necessarily end a court's inquiry into whether spousal property was owned by the entireties.

In the case of real property, the law presumed that property titled in the names of spouses was intended to be held as a tenancy by the entirety in the absence of express language stating otherwise. *See Beal Bank*, 780 So. 2d at 54-55; *Hector Supply*, 254 So. 2d at 780. With respect to personal property such as bank accounts, the law distinguished between spousal accounts that expressly designated the account as an entireties account and those lacking that designation. The law treated accounts with an express designation the same way it treated real property titled in the name of spouses—it presumed the parties intended ownership by the entireties. *See Beal Bank*, 780 So. 2d at 60; *Hector Supply*, 254 So. 2d at 781.

In accounts without a designation, however, the law did not apply such a presumption. Rather, the law required an inquiry into whether the parties intended that the property be owned by the entireties. *See Hector Supply*, 254 So. 2d at 780 ("[N]ot only must the form of the estate be consistent with entirety requirements, but the intention of the parties must be proven."). The rationale for requiring proof of the parties' intent was the fact that a married couple could hold property either as a tenancy by the entirety or as joint tenants with the right of survivorship and each form of ownership shared the unities of possession, interest, time, title, and survivorship. *See Beal Bank*, 780 So. 2d at 52-53. If the

4

form of ownership was not expressly stated, courts inquired into the parties' intent when they opened the account to determine how the account was owned—i.e., jointly or by the entirety. *See Hector Supply*, 254 So. 2d at 781 ("[S]ince the form [of a tenancy by the entireties] will be similar to that of a joint tenancy, and since the spouses may or may not intend that a tenancy by the entireties should result, [t]he intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties.")

In *Beal Bank*, the court sought to remedy the problems that arose from the different standards of proof it had applied to real property versus personal property. *See* 780 So. 2d at 55-56 (discussing the difficulty of proving intent and the resulting litigation). *Beal Bank* did so by receding from the pre-*Beal Bank* case law requiring an inquiry into the parties' intent when a spousal account lacked a specific designation that the account was held by the entireties and replaced the inquiry with the presumption it had applied to real property. *See id.* at 57-58; *Gibson v. Wells Fargo Bank, N.A.*, 255 So. 3d 944, 946-47 (Fla. 2d DCA 2018) (discussing *Beal Bank* and noting that by adopting a presumption, "the court eliminated any lingering distinctions between real property and personal property held jointly by wife and husband").

Unlike Loumpos's account, the accounts at issue in *Beal Bank* were *not* expressly designated as tenancies by the entireties. After an evidentiary hearing at which the account holders testified regarding their intent in opening the accounts, the trial court found that the accounts were entireties accounts. *See Beal Bank*, 780 So. 2d at 49-51. On appeal, the district court, in a split opinion, reversed as to some accounts, affirmed as to others, and certified two questions to the

5

supreme court.[1]  *See id.* at 51-52.  The supreme court accepted the case but rewrote the certified questions.  *See id.* at 48-49.  Each of the questions drafted by the supreme court assumed that "the unities required to establish ownership as a tenancy by the entireties exist."  *Id.* The first question addressed whether the court should abandon the inquiry into intent and create a presumption in its place:

> In an action by the creditor of one spouse seeking to garnish a joint bank account titled in the name of both spouses, if the unities required to establish ownership as a tenancy by the entireties exist, should a presumption arise that shifts the burden to the creditor to prove that the subject account was not held as a tenancy by the entireties?

*Id.* at 48.  The court answered the question in the affirmative:

> Accordingly, we hold that as between the debtor and a third-party creditor . . . if the signature card of the account does not expressly disclaim the tenancy by the entireties form of ownership, a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties *as long as the account is established by husband and wife in accordance with the unities of possession, interest, title, and time and with right of survivorship.*  The presumption we adopt is a presumption affecting the burden of proof pursuant to section 90.304, Florida Statutes (2000), thus shifting the burden to the creditor to prove by a preponderance of evidence that a tenancy by the entireties was not created.

*Id.* at 58-59 (emphasis added) (footnotes omitted) (citation omitted).

Given the court's references to the presence of the unities, *Beal Bank's*

---

[1] The district court unanimously reversed the trial court's ruling that one of the accounts at issue (Merrill Lynch) was an entireties account.  *See Beal Bank, SSB v. Almand & Assocs.*, 710 So. 2d 608, 608 (Fla. 5th DCA 1998).  The trial court had erroneously concluded that the account was exempt from garnishment even though it lacked the unities of time and title—thus negating two of the requisites for an entireties account.  The supreme court did not address this account.  *See Beal Bank*, 780 So. 2d at 49 n.2.

holding lends no support to Loumpos's argument that the court dispensed with the requirement that they be present.

Nor do we find support elsewhere in *Beal Bank*. *Beal Bank* receded from *Hector Supply*, but only to the extent that *Hector Supply* called for an inquiry into the parties' intent. *See id.* The court noted its continued agreement with the discussion in *Hector Supply* pertaining to the type of account we have in this case—one where the signature card has an express designation.[2] *See Beal Bank*, 780 So. 2d at 60 (citing *Hector Supply*, 254 So. 2d at 781). In other words, *Beal Bank* left undisturbed the law applicable to accounts having a signature card expressly stating it was an entireties account, including the requirement that the account be established in accordance with the unities of possession, interest, time, title, marriage, and survivorship. *See Hector Supply*, 254 So. 2d at 781.

Loumpos's view of *Beal Bank* is not without support, however. In *Versace v. Uruven, LLC*, 348 So. 3d 610, 613-14 (Fla. 4th DCA 2022), the court held that after *Beal Bank*, a signature card alone—without reference to the unities—determines whether a spousal account is held by the entireties if the account signature card contains an express designation that it is an entireties account. *Versace*'s stated rationale for this conclusion is the passage in *Beal Bank* in which the court expressed its continued agreement with *Hector Supply's* statement that when a

---

[2] At issue in *Hector Supply* was whether an account in the name of a husband and wife lacked the unity of possession or control. The district court reversed the trial court's determination that the unities were lacking, found they were not, and, because the signature card did not specify the form of ownership, remanded to the trial court to determine the parties' intent in that regard. *See* 254 So. 2d at 781. *Beal Bank* receded from the inquiry into intent but otherwise approved *Hector Supply*. *See Beal Bank*, 780 So. 2d at 60.

signature card designates an account as a tenancy by the entirety, that "*ends the inquiry*" as to the form of ownership.  *Id.* at 613 (quoting *Beal Bank*, 780 So. 2d at 60).  *Versace* notes the statement is unqualified, and it rejects the creditor's argument to the extent the creditor was arguing that the account lacked the unity of time and therefore it could not be an entireties account.  *See id.*  The flaw in this observation is that it ignores the context in which the *Beal Bank* court made the statement.  In context, it is apparent that "the inquiry" to which *Beal Bank* is referring is the inquiry into the parties' intent as to the form of ownership of the account.  *See* 780 So. 2d at 60-61.

Further, to adopt *Versace*'s view of *Beal Bank*, we would have to conclude the court *sub silentio* dispensed with the common law requirement that entireties accounts must be established in accordance with the unities of possession, interest, title, time, marriage, and survivorship.  Contrast this with the court's treatment of its decision to substitute a presumption in place of the inquiry into intent.  In adopting the presumption, the court *expressly* announced it was making a change to the common law:

> The time has come for us to recognize that more confusion and less predictability in the law exists because of our Court's failure to recognize a presumption in favor of a tenancy by the entireties arising from joint ownership of bank accounts by husband and wife.  Because this issue involves one arising from this State's common law and because the refusal to extend a presumption to personal property was a product of this Court's jurisprudence, we conclude that it is appropriate for us to recede from our prior case law.

*Beal Bank*, 780 So. 2d at 58.  Certainly, had the court also sought to eliminate the common law requirement that entireties accounts be established in accordance with the unities of possession, interest, time, title, and survivorship it would have expressly said so.

8

Loumpos also points to *Versace*'s discussion of the last sentence in section 655.79(1) as additional support for her position.  That sentence states:  "Any deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing."  *Versace*, 348 So. 3d at 613.  *Versace* found that this sentence expanded *Beal Bank* and eliminated any consideration of the unities of formation even in cases where there is no express designation on the signature card.  *See id.* at 614.  *Versace* does not elaborate on how it reached this conclusion—it simply declares that under section 655.79(1), "[n]o one need establish all the common law unities of tenancy by the entireties when a third party creditor seeks to garnish" an account in the name of a husband and wife.  *Id.*  We cannot agree with *Versace* on this point either.

First, its reading is not supported by the statute's text.  Section 655.79, titled "Deposits and accounts in two or more names; presumption as to vesting on death," states:

> (1) Unless otherwise expressly provided in a contract, agreement, or signature card executed in connection with the opening or maintenance of an account, including a certificate of deposit, a deposit account in the names of two or more persons shall be presumed to have been intended by such persons to provide that, upon the death of any one of them, all rights, title, interest, and claim in, to, and in respect of such deposit account, less all proper setoffs and charges in favor of the institution, vest in the surviving person or persons.  Any deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing.

> (2) The presumption created in this section may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent.  In the absence of such proof, all rights, title, interest, and claims in, to, and in respect of such deposits and account and the additions thereto, and the obligation of the institution created thereby,

9

less all proper setoffs and charges in favor of the institution against any one or more of such persons, upon the death of any such person, vest in the surviving person or persons, notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person and notwithstanding that the provisions hereof may constitute or cause a vesting or disposition of property or rights or interests therein, testamentary in nature, which, except for the provisions of this section, would or might otherwise be void or voidable.

*Versace*'s interpretation of the statute is not based on its text but rather relies on an inference that when the legislature added the last sentence to subsection (1) it intended to abrogate the common law requirements for the formation of a tenancy by the entirety. However, "[a] basic rule of textual interpretation is that 'statutes will not be interpreted as changing the common law unless they effect the change with clarity.' " *Peoples Gas Sys. v. Posen Constr., Inc.*, 322 So. 3d 604, 611 (Fla. 2021) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012)); *Carlile v. Game & Fresh Water Fish Comm'n*, 354 So. 2d 362, 364 (Fla. 1977) ("Inference and implication cannot be substituted for clear expression."); *Dudley v. Harrison, McCready & Co.*, 173 So. 820, 823 (Fla. 1937) ("The rule of construction is well settled that where statutes are in derogation of the common law, they should be strictly construed, and that statutes will not be held to have changed well-settled common-law principles by implication unless the implication is clear, or is necessary to give the express provisions of the statute, and the public policy thus established, full force and effect."). In our view, section 655.79(1) lacks the "clear expression" the case law requires to change the common law. Rather than abrogating the common law, the last sentence of subsection (1) appears to have simply codified *Beal Bank*. *See In re Benzaquen*, 555 B.R. 63, 67 (Bankr. S.D. Fla. 2016)

(noting that the statute "codified the presumption judicially established in *Beal Bank*, and, consistent with *Beal Bank*'s holding, the presumption does not change the required six unities").

The legislature knows how to abrogate common law unities when it wants to. Section 689.11, Florida Statutes (1971) is instructive. Section 689.11 abrogated the common law requirements of unity of time and title to create a tenancy by the entireties in real property. Under the common law, the owner of real property could not execute a deed conveying property to himself and his spouse as tenants by the entireties because the unities of time and title were not satisfied. *See Clampitt v. Wick*, 320 So. 3d 826, 831-32 (Fla. 2d DCA 2021) (quoting Jeffrey A. Baskies, et al., *Joint Ownership, in Basic Estate Planning in Florida*, § 7.3(A) (Fla. Bar. CLE 10th ed. 2020)). To satisfy those requirements, the owner would typically transfer the property to a straw man who would then immediately transfer the property back to the original owner and his spouse as tenants by the entirety. *See id.* The legislature statutorily eliminated the need to use a straw man to satisfy the unities of time and title by enacting section 689.11(1)(b) which expressly provides that an estate by the entirety can be created where the spouse holding title conveys the title to both spouses. *See id.* The legislature could easily have used similar language in section 655.79(1), but it did not.[3]

---

[3] Alternatively, the legislature could simply have expressly abolished the unities of time and title, as it proposed to do in 2019 via Senate Bill 1154. *See* S.B. 1154, 2019 Leg., 121st Reg. Sess. (Fla. 2019). That bill would have created section 689.151, providing, "With respect to joint tenancies with right of survivorship and tenancies by the entirety in personal property, the common law requirements of unity of time and title are abolished." Fla. SB 1154 §1(2) p. 3 (2019). That proposed legislation, however, did not become law.

Our conclusion that the legislature's addition of the last sentence to section 655.79(1) did not abrogate the common law requirements to form a tenancy by the entirety is further supported by contrasting it with the statute's treatment of the presumption in favor of the creation of a joint account with the right of survivorship. Subsection (1) creates the presumption in favor of survivorship, and subsection (2) explains how that presumption can be rebutted. But subsection (2) goes further and expressly states that the presumption of survivorship applies even absent any intention of effecting an inter vivos gift—i.e., "notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person"—which was a requirement at common law. *See* § 655.79(2); *see also In re Est. of Combee*, 601 So. 2d 1165, 1167 (Fla. 1992) (holding that section 658.56, Florida Statutes (1987),[4] maintains the presumption in favor of a joint tenancy with the right of survivorship even if the intent is for the funds to "be transferred to the survivor only upon death").[5] As an alternative to expressly abolishing the unities of time and title, the legislature could easily have used similar language in section 655.79(1), but it did not do that, either.

For the reasons explained above, we conclude that neither *Beal Bank* nor section 655.79(1) eliminated the common law requirement that

---

[4] Section 655.79 replaced former section 658.56. *See* ch. 92–303, §§ 48, 194, Laws of Fla.; *Karr v. Vitry*, 135 So. 3d 372, 372 n.2 (Fla. 5th DCA 2014).

[5] Prior to the enactment of the statute, if the sole intent was to make a gift that vested only upon the death of the creator, the transfer was void as an attempt to do what could only be accomplished by a will. *See Chase Fed. Sav. & Loan Ass'n v. Sullivan*, 127 So. 2d 112, 114 (Fla. 1960).

an entireties account must be established in accordance with the unities of possession, interest, time, title, survivorship, and marriage. Accordingly, we affirm the trial court's denial of Loumpos's claim of exemption and in doing so, we certify conflict with *Versace.*

Affirmed.

LaROSE and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.